# CASE,

## BEFORE WOODWORTH, J.

IN VACATION AFTER OCTOBER TERM, 1826.

---

### *Ex parte* VERMILYEA and others.

ON application to Mr. Justice WOODWORTH, in behalf of *Vermilyea and others* for the allowance of a certiorari, to remove into the supreme court the record of their conviction, from the court of oyer and terminer of the city and county of *New-York*, his honor deeming the question of too much importance to be disposed of without giving the counsel for the people an opportunity to be heard, directed notice to be given to the district attorney of the city and county of *New-York*. Notice having been given accordingly, the questions presented were argued before the judge at his chambers, in *Albany*, on the 22d and 23d of *December*, 1826, by

*A. Spencer* and *B. F. Butler*, for the application, and

*Talcott*, (attorney general,) contra.

His honor afterwards discussed the questions at large ; and gave his opinion as follows :

WOODWORTH, J. The defendants were convicted at a court of oyer and terminer, held in the city of *New-York*,

A certiorari removes the record only.

In criminal cases, doubts upon the admission or legal effect of testimony, cannot be brought before a superior court by certiorari, or writ of error.

A bill of exceptions is inapplicable to a criminal cause ; and in such causes the admissibility, or legal effect of testimony, can be examined in a superior court, only on a report or case agreed upon ; the presumption being, that where there is reasonable ground for doubt, the judgment will be suspended till the opinion of the superior court be known.

But a challenge for principal cause, forms a part of the record ; and to review this, a certiorari will lie in a criminal cause ; and a writ of error in a civil cause.

Otherwise of a challenge to the favor.

A challenge for principal cause may be demurred to, or issue may be taken upon it.

Where the facts are admitted and referred to the court, this is, in substance, a demurrer ; and should be entered on the record as such.

If a juror have expressed an opinion against the party, though from his knowledge of the cause, and not from any favor or ill will ; yet this is a principal cause of challenge.

So, *it seems*, if his opinion be grounded on the information of those who are acquainted with the facts. Otherwise, where his opinion is grounded on mere rumour.

Vacation after
October term,
1826

Ex parte
Vermilyea.

of a conspiracy to defraud certain incorporated companies and individuals, of their goods, chattels and effects. Application is now made for the allowance of a certiorari, to remove the record and proceedings into the supreme court, for the purpose of reviewing the decision of the court below, on a challenge taken to some of the jurors ; and also on the ground of a fatal variance between the proof offered at the trial, and the charges contained in the indictment. As to the latter, I will merely observe, that a certiorari removes the record only ; and as the evidence produced on the trial forms no part of the record, the writ would be a nugatory process. In criminal cases, where questions of law arise at the trial, either as to the admission of testimony, or its legal effect when admitted, if doubts are entertained, the facts are brought before this court in the form of a report, or case agreed on. If the objections afford reasonable ground for doubt, the presumption is, that judgment will be suspended until the opinion of the superior court be known. As far as I know, questions of this description have always been submitted to the supreme court in that manner. The experience of half a century has not called for any legislative provision to vary this course of partice ; nor am I aware that complaints have ever been made, that the exercise of this discretion has been rigorous as respects the accused. On the contrary, it will be found that the cases from inferior tribunals, which have been reviewed, furnish no inconsiderable evidence of the solicitude and tenderness of our courts, in allowing even to the greatest culprits the benefit of every legal objection.

If, however, in any given case, the inferior court should erroneously refuse to interfere, it would afford no ground for a certiorari ; because the remedy does not apply to, or reach the error sought to be corrected.

If a bill of exceptions would lie in a criminal case, the difficulty would be removed ; but it is well settled that it does not.

With respect to the admission of the jurors, I will confine my observations to the case of *Andrew S. Norwood*

From the affidavits and certificates of the clerk, it appears that Mr. *Norwood* was challenged for principal cause ; and the decision of the challenge referred to the court, without any objection on the part of the district attorney. The specific ground of the challenge was not in the first instance stated.   The juror testified, that he had heard all the evidence given on the former trial, having been present at it; that he had made up his opinion perfectly, on the evidence, that the defendants were all guilty ; and had frequently expressed his opinion to that effect.  Upon being inquired of by the district attorney, he stated that he felt no bias or partiality against any of the defendants ; that if the testimony given on this trial should appear as it did on the former, he should certainly find the defendants all guilty ; and added, that he thought he felt competent to give a verdict according to his oath, and the evidence as it should appear.

The court decided that the juror stood indifferent; and that the challenge was not true.   He was accordingly sworn and sat on the trial.

On this evidence, two questions arise ; *first*, whether the challenge forms a part of the record, so as to be the subject of removal by certiorari ? *Second*, whether the exception to the juror was well taken ?

The first question depends on this ; do the facts constitute a principal cause of challenge ? This arises when there is a manifest presumption of partiality.   In that case it excludes the juror ; but a challenge to the favor, where the partiality is not apparent, must be left to the discretion of triers.   The facts relied on generally consist of slight circumstances, respecting which, the law has not laid down any certain rule.   In such cases the judgment of the triers is conclusive.   The question arising on such a challenge, is altogether extrinsic of the record.   Evidence may be reviewed in a superior court by demurrer, or bill of exceptions ; but neither applies to evidence in support of a challenge for favor.

The next inquiry is, whether a principal cause of challenge may become parcel of the record, and under what

circumstances ? If it cannot in any case, it is unnecessary to consider the objection taken to the juror.

It is laid down in 3 *Bac. Abr.* 766, that " if a challenge be taken, and the other side demur, and it be debated, and the judge overrules it, it is entered upon the original record ; and if at nisi prius, it appears upon the postea what the judge hath done ; but if the judge overruled the challenge upon debate, without a demurrer, then it is proper for a bill of exceptions." *Chitty,* 1 *vol. Cr. L.* 548, recognizes the same doctrine. He refers to *Skin.* 101, and *Hut.* 24. *Chitty* also says, at the same page, that if a demurrer be resolved on, either to the array or to the polls, there is no occasion for those circumstances which must attend a demurrer to a plea, such as the signature of counsel ; but it is good as soon as agreed on at the bar, and the prothonotaries ought of right to enter it on the record. These authorities suppose a principal cause of challenge ; and establish the proposition, that where the facts alleged as cause of challenge, are not disputed, the question is decided summarily by the court. On the argument before me, the attorney general conceded the law to be, that if the challenge was good for principal cause, and the other party demurred, it became parcel of the record, and might be removed. He contended, however, that this was not a challenge of that description ; that the facts made out a challenge for favor ; and that the judge was substituted in the place of triers by consent of parties ; and consequently that the question was to be viewed in the same manner as if it had been actually decided by the latter.

If it should turn out that the defendants have not established a principal cause of challenge, the argument is well founded. The real difficulty, if any exists, is, in ascertaining whether the public prosecutor is to be considered as having demurred to the challenge. The proceedings in this stage, were somewhat informal. The more regular course would have been, to have stated, in the first instance, the facts relied on for cause. The prosecutor would then probably have elected to plead or demur. It seems, however, that the juror was challenged without

specifying the cause, and the question referred to the court. What was referred to the court? The juror was examined; there was no dispute about facts. When that happens in the case of a principal challenge, as well as in that for favor, triers are appointed. The court were called upon to pronounce the law; to decide whether the facts made out a principle cause of challenge; or, in other words, whether they were sufficient to exclude the juror. I admit, if the facts were only proper to be submitted to triers, in support of a challenge for favor, the defendants are concluded by the decision of the judge; but if, *per se*, they formed a principal cause, they may avail themselves of it as such. A demurrer is an admission of the fact, submitting the law arising on that fact to the court. On a demurrer to a challenge, no strict technical form seems to be required. Have not both parties conceded, that the testimony of the juror was true? and have they not called on the court to declare the law arising on that testimony? Will it be denied that this is in substance a demurrer? or will it be gravely contended, because the party may not have said in terms, he demurred to the challenge, but submitted to the court whether it was sufficient, in point of law, that, therefore, a substantial difference exists between the two cases? that the one shall be entered on the record, and shall be subject to review, while the other is final and conclusive? I cannot persuade myself, that the rights of any party are held by such a tenure; and particularly in a criminal case, where there is no remedy by bill of exceptions. I am, therefore, of opinion, that the judge having been called upon to decide whether the challenge was valid in law, it is, in substance, the same as if the party had demurred in express terms. If viewed in the light of a demurrer, it becomes parcel of the record, and is liable to be removed by certiorari. That the counsel for the defendants considered the decision on the challenge as subject to the revision of a superior tribunal; and did all that was deemed necessary to secure that right, is apparent from the fact alleged in the affidavit of Mr. *Hoyt*, who says, that the defendants' counsel requested

the court to take down the testimony as to the competency of the jurors, in order to give the parties the benefit of reviewing the decision ; and that the presiding judge, upon such request, read over the notes of evidence, and corrected the same in some particulars, on the suggestion of the defendants' counsel.

It is, however, contended, that this case falls within that part of the doctrine laid down by *Chitty* and *Bacon*, where it is said, that if the challenge is overruled without demurrer, on being debated, the objection may afterwards be made the subject of a bill of exceptions ; and as no bill was taken, the decision could not be brought before the supreme court, unless by consent. It seems to me, this rule does not apply in criminal cases. Whether the counsel demurs to the challenge, or merely argues that it is not good in law, creates no material distinction. If the distinction was ever entertained in the English courts, it must have been founded on a belief that a bill of exceptions would lie. But if it be a conceded point, that no bill of exceptions will lie, I think it goes far to show that the rule laid down is not applicable to criminal, but civil cases. I have traced the doctrine to its source, by examining the cases cited by *Chitty*. They are to be found in *Skinner*, 101, and *Hut* 24. The case from *Skinner*, was decided 35 *Cha*. 2, between the king and the city of *Worcester*. It was an information in the nature of a *quo warranto*. The case states, that the counsel for the city of *Worcester* came with their bill of exceptions ; they challenged the array, because the venire was returned as by both the coroners ; when, in truth, but one of them returned it. They likewise challenged the polls, for want of freehold, which was overruled. No question was raised, whether a bill of exceptions would lie. *Saunders*, chief justice, said, if the judge overruled the challenge upon debate, without a demurrer, then 'tis proper for a bill of exceptions. There are several answers to this case. It was not strictly a criminal proceeding. Informations at the common law, partook of the nature of a civil remedy, and in modern times, are considered as a civil remedy only. It must, I

apprehend, have been so considered by the court ; otherwise, a bill of exceptions would not have been suggested. This is evident from the fact, that prior to the 35th of *Charles* 2. the judges in England had expressed an opinion on this point.

In the case of sir *Henry Vane,* reported in *Keling,* 15, and 2 *St. Tri.* 435, 450,1, 14 *Car.* 2, a construction is given to the statute ; and it was held by all the judges, that the statute of *Westm.* 2, *c.* 31, which gives the bill of exceptions, extends only to civil causes, and not to criminal. *Keling* states, that the court agreed, the words of the statute are plain as to this point. So also, 1 *Keb.* 324, where the same case is reported, the judges observe, a bill of exceptions is not within the statute, or ever heard of, the statute not extending to any indictment. This case having been decided before the case in *Skinner,* it is manifest the court had no reference to criminal proceedings, when speaking of a bill of exceptions, as applicable to a challenge, disposed of without demurrer. As a civil remedy, it may undoubtedly be pursued, if there is no demurrer to the challenge in form ; but even then, in a civil case, its necessity may well be questioned, as will presently be shown. The case then leaves the principle untouched, that where the judge decides the law on a principal challenge, whether arising on demurrer, or by a submission of the question, an entry is made on the record, which may be reviewed.

The decision in *Skinner,* upon which *Chitty* and *Bacon* rest, is an authority to prove there is a remedy, where a good cause of challenge is overruled. It is an admission of this principle. The public prosecutor cannot be compelled to demur. Shall his refusal or omission deprive the accused of a right ? Can the right depend on such a contingency ? I think not. In accordance with this view of the subject, it seems to me the case of *Hesketh* v. *Braddock,* (3 *Burrows,* 1847,) decided on a writ of error, proceeded. The record states that the defendant challenged the array, to which the plaintiff demurred ; the challenge was disallowed. The defendant then, *ore tenus,* in open

Vacation after court, challenged the polls, because the jurors were citi-
October term, zens and freemen of the city of *Chester*.   The challenge
1826.        was disallowed ; and thereupon the issue was  tried and a
Ex parte     verdict found for the plaintiff.   The court of king's bench
Vermilyea.   considered the validity of the challenge, and passed upon
it, as parcel of the record.  There was  no suggestion by
the court or counsel, that the challenge to the polls was
improperly brought up.   The challenge to the polls was
not demurred to ; but it was disallowed.   On what prin-
ciple did it become part of the record ?   Manifestly be-
cause the decision of the court upon it was substantially
the same, as if a demurrer had been filed in form.

In 3 *Wood. Lec.* 347, *n*, (*i*), the form of the record in
the case from *Burrow* is given.   The challenge to the
polls is thus entered : " And  hereupon the said S. B. *ore*
*tenus*, in open court, challengeth the polls, because, he
says, that the jurors are citizens and freemen of the c'ty
of *Chester ;* which said challenge by the court here is dis-
allowed."  Professor *Woodeson* then states, that the chal-
lenge *ore tenus* was omitted in the first engrossment of the
record ; that the defendant alleged diminution ; and that
it was then inserted by rule.  This case sanctions the doc-
trine contended for by the defendants' counsel, that the
challenge may be removed as parcel of the record, provid-
ed it was a principal cause of challenge.

The only remaining question is, whether the facts stat-
ed by the juror constituted a principal cause of challenge.

It will not be denied, that every man, whether in a civ-
il or criminal case, is entitled to an impartial jury.  Though
our constitution merely  preserves the trial by jury invio-
late forever, and does not, in express terms, guarantee an
impartial jury ;  yet, *ex vi termini*, it is embraced in its
provisions ;  as much so, as that the judges shall be impar-
tial men.   The same general principle is adopted by the
English law.   The only question is, as to the application
of that principle.   Can a juror be impartial or indifferent
to the question, who, from a knowledge of the facts, con-
fesses that he has made up his mind that the accused are
guilty ?  It is a fallacy to suppose such a man stands impar-

tial, merely because he has no malice or ill will against the defendant. This doctrine, however, has been strenuously urged ; and cases have been cited, to show that the law is so understood in *England*.

In the case of the *King* v. *Emonds and others,* (4 *Barn. and Ald.* 470,) chief justice *Abbot* observes, that expressions used by a juryman, are not a cause of challenge, unless they are to be referred to something of personal ill will towards the party challenging. He relies on the doctrine laid down in the year books, 7 *Hen.* 6, *fol.* 25, where *Babington,* justice, says, "if the juror has said he will pass with the one party, for the knowledge that he has of the matter. and of the truth, he is indifferent , but if he has said so for any affection of the party, he is favorable." *Hawkins, B.* 2, *ch.* 43, *s.* 28, is also referred to. He observes, " that it hath been allowed a good cause of challenge, that the juror hath declared his opinion before hand, that the party is guilty, or will be hanged, or the like." *Hawkins* adds, " yet it hath been adjudged that if it shall appear that the juror made such declaration from his knowledge of the cause, and not out of any ill will to the party, it is no cause of challenge." The opinion of the court of king's bench, in *Barn.* and *Ald.* rests on these ancient authorities ; it does not profess to consider the soundness of the doctrine advanced. Now, admitting the law had been so applied at an early day, when the prisoner did not possess even the right of producing testimony ; I apprehend that after the lapse of centuries, when the rights of parties are better understood, and have been more accurately defined, it would not be presumption to inquire whether the common law relating to the right of challenge, had not in this instance been misapplied ; or whether it was consistent with the law as laid down by lord *Coke*, who says, "the rule of law is, that the juror must stand indifferent as he stands unsworn." (*Co. Litt.* 155, *b.*) It seems to be admitted in some of the old cases, that an opinion formed and expressed, is good cause of challenge. Upon what is this founded ? On the supposition that it creates a bias. All experience goes to prove

Vacation after
October term,
1826.

Ex parte
Vermilyea.

the infirmity of human nature is such, that we cannot at pleasure get rid of preconceived opinions. The question is not how great is the bias, but does any exist ? The least is sufficient to exclude. Can the source from whence it is derived be material ? As to the accused, it is the same thing, whether the bias proceeds from a preconceived opinion, or malice and ill will. Be it either, he is equally affected. Why then superadd the necessity of proving malice or ill will ? Without it, the parties do not contend on equal ground ; by requiring it to be proved, in order to exclude the juror, it only shows the disparity to be greater. If the question were entirely novel, I should think our courts would incline to take a different view of it. But it has occurred here, and has been well considered. The supreme court decided in the case of *Blake v. Millspaugh*, (1 *John.* 316,) it was good cause of challenge to a juror, that he had previously given his opinion on the question in controversy between the parties. The case of *Durell v. Mosher*, (8 *John.* 445,) is not contradictory. There, the juror said, if the reports of the neighbors were correct, the defendant was wrong, and the plaintiff was right. No definite opinion was expressed or formed. The court so adjudged ; and observed that the declaration was hypothetical. It is no more than saying, if the defendant has done an illegal act, let him answer for it ; which is no evidence of partiality. In the case of *Pringle v. Huse*, (1 *Cowen*, 432,) a juror was challenged for having expressed an opinion against the plaintiff. It was held that this was a principal cause of challenge, and should be tried by the court ; and that the juror challenged, might be called as a witness. In the case of *Coleman v. Hagerman*, the same principle was adopted by the supreme court. The late chief justice *Spencer* has furnished me with a manuscript opinion of his, in that cause. It was an action for an assault and battery of an aggravated character. The verdict was for $4,000 damages. The grounds of the motion were, that *Gráham*, one of the jury, had made use of language, indicating an opinion that the defendant ought to be exemplarily punish-

Vacation after
October term,
1826.

Ex parte
Vermilyea.

ed. It appeared that *Graham* was wholly unacquainted with the parties until after the trial ; and that the opinions expressed by him were founded on newspaper publications. He swore that he had no bias against, or partiality for either of the parties, and personally knew nothing of the assault and battery complained of: yet the court unanimously awarded a new trial, on the ground that *Graham* did not stand indifferent, in consequence of the opinions he had expressed. In the manuscript opinion referred to, the late chief justice stated the principles adopted by him, on the then recent trial of *Van Alstyne*, for the murder of *Huddlestone.* It was thus : if a person had formed or expressed an opinion for or against the prisoner, on a knowledge of any of the facts attending the murder, or from information of those acquainted with the facts, he considered it good cause of challenge ; but if the opinions of the jurors were formed on mere rumours and report, he decided that such opinions did not disqualify the jurors; and, as I understood, the opinion delivered on that solemn occasion, met the decided approbation of the supreme court.

The principle upon which these cases were decided, is, that an opinion formed and expressed by a juror, is of itself evidence that he does not stand indifferent between the parties. I do not perceive how the case before me can be distinguished. On the trial of *Fries* for treason, before Judge *Iredell*, on an application for a new trial, one question was as to the competency of a juror who had expressed himself in strong terms as to the prisoner's guilt. That learned judge put the question on this ground: that when a predetermined opinion is formed, from whatever motives, it creates an improper bias, extremely difficult to get rid of ; and may influence an honest man unwarily to give a wrong verdict: that he becomes less able to discriminate facts. The reasoning of chief justice *Marshall*, on the trial of *Col. Burr*, *vol.* 1, *p.* 370, 419, is directly in point. He has shewn in the most satisfactory manner, that a juror who has given his opinion, cannot be consider-

ed impartial; that the natural tendency of preconceived opinions in a juror, is to obstruct the impartial administration of justice. He asks, why a distant relative, or he who has prejudices, cannot serve on a jury? Because he is presumed to have a bias. He may declare that, notwithstanding, he is determined to listen to the evidence, and be governed by it; but the law will not trust him. The chief justice observes, " Is there less reason to suspect him who has prejudged the case, and deliberately formed and delivered an opinion upon it? The law suspects, and not without reason, that he will listen with more favor to that testimony which confirms, than to that which would change his opinion. It is not to be expected that he will weigh evidence or argument, as fairly as a man whose judgment is not made up in the case." These enlightened views place the question upon the true ground; not whether the juror feels resentment or ill will; but whether for any cause, he has a bias on his mind that may disqualify him from deciding with strict impartiality. I entirely concur in the reasoning of that case, as containing a luminous exposition of the ground upon which the rule is founded.

The result of my opinion is, that enough has been shewn to render the decision in the court below questionable; that the challenge forms a part of the record; and that the defendants are entitled to the allowance of a certiorari.

Certiorari granted.