MARY ANN DAVIS v. JOHN MAHANY AND ADDISON A. GROVER.

1. On challenge to a justice of the peace three triors were appointed; their determination of facts held to be conclusive under the statute. (*Rev.* 1874, *p.* 652, § 262.)
2. An attachment may issue against a female debtor.
3. An attachment may be served upon the proceeds of execution, as a right and credit, in the hands of a constable, made under execution for the defendant in another action before a justice of the peace, in which the defendant in attachment is plaintiff, and which proceeds have not yet been paid into court.
4. The defendant in attachment in the justice's court must file a bond on appearance.

On *certiorari* to James T. L. Anderson, one of the justices of the peace of the county of Mercer.

The facts appear in the opinion of the court.

Argued at February Term, 1875, before Justices WOODHULL, VAN SYCKEL and SCUDDER.

For the plaintiff in *certiorari, Wm. Y. Johnson.*

For the defendants, *J. F. Hageman.*

The opinion of the court was delivered by

SCUDDER, J. An attachment was issued by the justice of the peace in this cause, against the plaintiff in *certiorari,*

Mary Ann Davis, as a non-resident debtor, at the suit of Mahany and Grover, and judgment was rendered against her. These proceedings are brought into this court by writ of *certiorari*.

The first reason assigned for reversal is, that the justice of the peace who tried the cause, before and after the action was brought, advised and counselled the plaintiffs, and expressed his opinion upon the matters in controversy.

This challenge was interposed in behalf of the defendants in attachment, in writing, whereupon the justice appointed three triors under section 3 of " an act the better to promote the impartial administration of justice." (*Nix. Dig., p.* 441 ; *Rev.,* 1874, *p.* 652.)

It appears, by the transcript, that they heard testimony and decided that the justice was not disqualified.

There is nothing in the papers against this finding, except the *ex parte* affidavit of the defendants' attorney, which was used before the justice on presentation of the challenge. The charge is a very serious one, affecting the official character of the justice. The statute forbids any justice or judge, who shall be related in the third degree to either of the parties, or be interested in the event of a cause, or who shall have been attorney on record, or counsel for either party, or shall have given his opinion upon the matter in question, to sit in judgment upon the trial or argument of the matter in controversy. This objection, when raised, should be examined with the utmost care and closest scrutiny, because it is at the very foundation of the administration of justice, that the litigants shall have an impartial judge to try the cause.

The justice, in this case, acted promptly and properly. He appointed three indifferent persons as triors, and, after hearing testimony, they determined that he was not disqualified.

There is nothing in the case before us opposed to this finding that the court can consider on this hearing, and it is, therefore, conclusive. Upon a challenge *propter affectum,* where the causes assigned are left to the discretion of triors

to decide their truthfulness, as in this statute, nothing appears on the record to controvert the finding, and it is conclusive. The question arising on such a challenge and trial are altogether extrinsic the record. *Ex parte Vermilyea*, 6 *Cow*. 555.

It was next objected, that the writ should have been quashed on the defendants' motion, because it could not be issued against a female debtor.

This point was based upon *Pullinger* v. *Van Emburgh*, 1 *Harr*. 457. This case was decided at September Term, 1838. At that time a defendant in attachment could only appear and defend, upon putting in special bail, in the higher courts. *Elm. Dig., p.* 22, § 12 ; *Ib. p.* 26, § 30.

In attachment before a justice of the peace, under act of March 15th, 1832, (*Elm. Dig., p.* 29, § 45,) appearance could only be entered upon filing bond, with condition to pay the costs or condemnation money, *or surrender to a constable.*

By section 6, act February 14th, 1818, (*Elm. Dig.* 256, § 24,) it was not lawful to confine the person of any female for debt.

Soon after the decision of *Pullinger* v. *Van Emburgh*, February 22d, 1839, (*Laws, p.* 63,) a supplement to the attachment act was passed. Section 2 enacts, that writs of attachment may be issued against any absconding or absent female. Section 3 changes the condition of the bond into the due and safe return of the goods, &c., leaving out the surrender of the defendant to the constable. As the case referred to held that a female debtor could not be proceeded against by writ of attachment, because she could not be held to bail in a civil suit, females being exempt from imprisonment or arrest for debt, it evidently appears that the legislature, soon after this decision, and with it in mind, relieved females from the liability to arrest under proceedings in attachment, and, in the same statute, enacted, that a writ of attachment might be issued against them. Such was the law when this writ of attachment was issued. *Nix. Dig., p.* 45, § 43 ; *Hackettstown Bank* v. *Mitchell*, 4 *Dutcher* 516.

The third reason assigned is, that the attachment was levied upon money in the hands of a constable, made under execution for the defendant in another action, before another justice of the peace, in which the defendant in attachment was plaintiff, and which money had not yet been paid into court. Upon motion to quash the writ on the affidavit of the defendants' attorney and agent, under act of March 13th, 1862, (*Nix. Dig., p.* 49, § 71,) the fact appeared, and was admitted, that this money was held by the constable, under execution not returned into court. The justice refused to set aside the attachment.

This question was raised and settled in *Crane* v. *Freese,* 1 *Harr.* 305. It was there held, that such money, in the sheriff's hands, could not be seized as money under an attachment in his hands, for the reason that it is not the goods and chattels of the plaintiff in the former suit until it is paid over to him, but that the attachment might be served thereupon as a right and credit of the defendant in attachment, in the sheriff's hands. That, notwithstanding said seizure, the sheriff should obey the command of his writ of execution, under which he raised the money, and bring it into court, and give notice to the plaintiff in attachment, or to the creditors, that he has done so. The court could then control the application of the funds, and protect the officer in the discharge of his duty. That if, after paying the money into court, the sheriff should be sued by *scire facias,* as garnishee, he might protect himself by showing that he has obeyed the process under which he raised the money. In that case, the *scire facias* against the sheriff, as such garnishee, was dismissed. That case entirely corresponds with this, and rules it. This conclusion is not amenable to the charge, that goods are seized which are in the custody of the law. The credit attached is not moneys and effects, goods and chattels, taken by one officer out of the custody and control of another, and away from the court under whose process the goods are held. This cannot be done. *Shinn* v. *Zimmerman,* 3 *Zab.* 150; *Hill* v. *Beach,* 1 *Beas.* 31; *Turner* v. *Fendall,* 1 *Cranch* 116;

*Ross* v. *Clarke*, 1 *Dallas* 354 ; *Thompson* v. *Brown*, 17 *Pick.* 462 ; *Drake on Attachment*, §§ 251, 505, 506.

Nor is the proceeding strictly a garnishment ; for, as was held in the case of *Crane* v. *Freese*, the officer holding the execution, if sued by *scire facias*, as garnishee, may protect himself by showing that he has obeyed the process under which he raised the money.

Nor is it opposed to public policy ; for, as was said in *Hill* v. *Beach*, 1 *Beas.* 48 : " It is the policy of modern legislation to facilitate the creditor in reaching the property of his debtor." This statute relating to attachment by its very terms, must be construed, in all courts of judicature, in the most liberal manner for the detection of fraud, the advancement of justice, and the benefit of creditors. *Nix. Dig.* 47, § 60.

The effect of the levy upon the credit in the hands of the officer under execution, is to arrest the payment to the plaintiff in execution, in whose hands it might be concealed, and withdraw from the creditor, and to compel the officer to pay the proceeds of the execution into court, in strict conformity with the command of his writ.

I am at a loss to conceive how it can be maintained that this stoppage of payment to the plaintiff, and bringing the money into court, according to the terms of the writ of execution, is taking goods and chattels from the custody of the law, by another opposing process. It is in furtherance of the law, and for the protection of creditors.

When the money is brought into the court having jurisdiction and control of the fund, it will be there determined what shall be done with it. If the plaintiff in execution, or person having a claim paramount to such plaintiff, or the creditors in attachment under which the right or credit has been levied upon, shall be entitled, the court will order payment according to the justice and right of the case. There will be no case of conflicting suits and opposing jurisdictions, but an honest and convenient appropriation of the debtor's property to the payment of his debts, if he be liable. If he be an ab-

sconding or non-resident debtor, payment to him will be almost certain to defeat the claims of creditors. And if we hold that the proceeds of execution are not his, so that they can be attached, until paid into his hands, then the result is to hinder creditors, and not facilitate the collection of just claims.

The case of *Armistead* v. *Philpot*, 1 *Doug.* 231, is in accord with this principle of appropriation of the debtor's money by the court. It was there held that if the plaintiff cannot find sufficient effects of the defendant to satisfy his judgment, the court will order the sheriff to retain, for the use of the plaintiff, money which he has levied in another action at the suit of the defendant.

In *Lomerson* v. *Huffman*, 1 *Dutcher* 625, Chief Justice Green, in delivering the opinion of the Court of Errors and Appeals, refers to the case of *Crane* v. *Freese*, as determining that money actually received by the sheriff for the defendant in attachment, may be attached as a right and credit of the defendant. With this approval, the law upon this point may be regarded as settled, and there was no error in the judgment of the justice in holding the levy of the attachment as good.

The last reason assigned is, that the justice refused to enter the appearance of the defendant, unless he filed a bond to the plaintiff under the statute. The defendant's counsel insists that he had the same right to appear as if a summons had been issued instead of an attachment.

The act of March 1st, 1871, *p.* 22, authorizing defendants in attachment to enter an appearance without bond, does not, by its terms, apply to attachments issued by a justice of the peace.

The entry in the clerk's book, the twenty days' notice to the plaintiff, or creditors, and the exclusion of other claims under such attachment after the entry of such appearance, are all applicable to the higher courts, and not to proceedings before a justice of the peace. *Nix. Dig.* 46, § 52, provides that the defendant may cause his appearance to be entered by filing with the justice a bond to the plaintiff. An appearance

can be effected in no other way. The defendant was, therefore, properly excluded from her further defence, until she had filed such bond. This disposes of all the points argued before the court.

The judgment of the justice is affirmed.