PIETRO BALBO, Plaintiff in Error, *v.* THE PEOPLE OF THE
STATE OF NEW YORK, Defendant in Error.

Under the acts of 1872 (chap. 475, Laws of 1872), and 1873 (chap. 427,
Laws of 1873), in reference to challenges of jurors, if a juror in a
criminal case, on being challenged for principal cause, discloses on his
examination that he has a fixed and definite opinion in the case on the
merits, and nothing else is shown, the court is bound as matter of law
to reject the juror as incompetent.

But if in addition he testifies that he believes he can render an impartial
verdict on the evidence ; that such previously formed opinion, will not
bias or influence him as a juror, the question of his competency is to
be determined by the court as a question of fact.

The decision of the trial court is subject to review upon appeal ; and the
appellate court is to determine the question from its own examination
of the evidence ; giving due weight to the circumstance that the trial
court had the juror before it.

Where the confession of a prisoner to an officer is voluntarily made, evi-
dence thereof cannot be rejected, because of the fact that the officer
held the prisoner in custody at the time upon an invalid process, or
without any process or lawful right.

Upon the trial of an indictment for murder, a juror was challenged for prin-
cipal cause, and this being overruled, was challenged for favor ; on his
examination in chief in support of the challenges, he testified in sub-
stance, that he read at the time an account of the murder in a news-
paper, which account, it was his impression, was a report of the testi-
mony taken before the coroner's inquest ; that he had not talked the
matter over with any person ; and, in answer to a leading question,
that he formed a positive and clearly marked opinion as to the guilt or
innocence of the accused, which was still in his mind, and that it would
require strong evidence to remove the opinion he then entertained in
regard to the case.    The prisoner was an Italian ; the juror also testified

"that it was a race he was not particularly fond of, and did not think much of, judging from those we have here." On his cross-examination the juror testified, that he read the account in the same way he read other items; that he took no particular interest in the case, and knew none of the parties, and had no knowledge of the circumstances, except as he read them at the time; that if a statement in the papers was contradicted in the next day's papers he believed the contradiction; that his impression in the case was based on the assumption that things reported are probably true; that he did not make a great deal of distinction between an opinion and an impression; that he should call an opinion of the truth or falsity of a statement he saw in a newspaper an impression, if he read it casually, and it slipped out of his mind, and is afterwards revived; that he did not know that he had anything more than that in his mind about this case; that he did not know what the defense was; that all he remembered was that a man killed his wife; that he was not conscious of having any impressions which would prevent his acting fairly and impartially in the case; that he had no doubt he could give a verdict upon the evidence without being influenced or biased by any opinion he had. In response to questions by the court the juror testified that he did not suppose that any opinion he had would bias, influence or prejudice him in any manner in the consideration of the evidence; that he believed it would not and that he could give full weight and effect to the evidence the same as if he had no opinion. The court thereupon, as the record states, "from observation of the appearance of the juror, his age, intelligence, his manner on the stand and his answers to questions, found that he was fair, impartial and unprejudiced, and held the challenge not true." *Held*, that there was no error in overruling the challenges.

*People* v. *Greenfield* (74 N. Y., 277), distinguished.

The prisoner was charged with killing his wife; the murder was committed in the city of New York; the prisoner on the night of the murder left that city and went to Wheeling, West Virginia, where he was arrested, without a warrant by police officers who had followed him. While on the way to and before reaching this State, he made a confession to one of the officers having him in charge, to the effect that he killed his wife. It was shown that no promises were held out, or threats used to induce the confession. *Held*, that it was properly received in evidence; that conceding the fact that the prisoner was at the time under illegal arrest, this did not render it inadmissible.

As to whether the arrest was illegal, *quære*.

(Argued March 1, 1880; decided April 6, 1880.)

ERROR to the General Term of the Supreme Court, in the first judical department, affirming a judgment of the Court of Oyer and Terminer, in and for the county of New York,

entered upon a verdict convicting the plaintiff in error of the crime of murder in the first degree. (Reported below, 19 Hun, 424.)

The crime charged was the killing of the wife of the accused by stabbing her in the neck with a knife.

On the trial Edward H. Betts was called as a juror. Upon examination by the prisoner's counsel, the questions and answers were as follows :

" Q. Have you formed or expressed any opinion as to the case now before the court ?

A. No, sir.

Q. Have you formed any impression in regard to the guilt or innocence of the prisoner ?

A. I may have read of the circumstance at the time, but I do not remember anything of it now.

Q. Do you remember what you have read in regard to this case, and from what source your information came ?

A. No ; it came from a paper ; I cannot tell which one ; probably the Herald.

Q. And at the time you read in the paper you formed an impression ?

A. I suppose I did at the time.

Q. Is that impression now in your mind ?

A. The fact is, I have so many in my mind, I cannot recollect ; I do not remember this thing now.

Q. This is the case of Pietro Balbo, charged with killing his wife, at 14 Rose street, on the last day of September, this year.

A. By stabbing ?

Q. Yes, sir.

A. I did form an opinion at the time.

Q. Have you still that opinion ?

A. I suppose I have."

Prisoner's counsel thereupon challenged the juror for principal cause. The cross-examination by the district-attorney was as follows :

" Q. You do not know anything about the case ?

A. No, sir; these things are so frequent.

Q. Are you conscious of having on your mind any impression which will prevent your acting fairly and impartially in this case?

A. I do not suppose I have.

Q. Have you any doubt that you can give a verdict upon the evidence that shall come from the witnesses?

A. Certainly, I can do that.

(BY THE COURT) : Q. Without being influenced or biased by any opinion?

A. I think so."

The court thereupon overruled the challenge. Upon request of the prisoner's counsel the examination of the juror, so far was made applicable to a challenge for favor. The further examination of the witness was as follows:

(BY PRISONER'S COUNSEL) : " Q. In your business do you have any relations or any business connection, or do you do any business of any kind with the Italians?

A. Yes, I have some business with them.

Q. Have you any prejudice either in favor of or against the Italians as a race?

A. It is a race I am not particularly fond of, and I do not think much of, judging from those we have here.

Q. Then your opinion in regard to the guilt or innocence of Pietro Balbo, which you formed some time since, is still in your mind?

A. Yes, it is now.

Q. Is that a positive, clearly marked opinion?

A. It was at the time; I think it is still.

Q. Have you talked this matter over with any other person?

A. No ; probably I read it to my family at the time in the morning paper.

Q. Do you remember whether the statements that you read in the paper were of the evidence taken before the coroner at the coroner's inquest?

A. Well, indistinctly I remember that, I think.

Q. You think you did read the testimony taken before the coroner in regard to this case ?

A. Yes, sir.

Q. And it was from the reading of those statements, the evidence taken before the coroner, that you formed the opinion you now have ?

A. I think it was.

(BY THE DISTRICT–ATTORNEY) : Q. You read the news-papers every day ?

A. Every day.

Q. You read about this case, you presume.

A. Yes, sir.

Q. And you read about it just as you read the other items in the newspaper ?

A. Yes, sir.

Q. You took no particular interest in the case ?

A. No, sir.

Q. You do not know any of the parties connected with it, and have no knowledge of the circumstances, except so far as you may have read them in the newspaper ?

A. That is all.

Q. If a statement that you see in the papers is contradicted in the next day's paper, you believe that ?

A. Yes, sir.

Q. Your impression is based upon the assumption that probably there is some truth in any report you see ?

A. Yes, sir.

Q. Do you make any distinction between an opinion and an impression ?

A. I do not make a great deal.

Q. Do you call it an opinion as to the truth or falsity of what you see in a newspaper, if you just read it casually, and it slips out of your mind, and then afterwards it is revived ?

A. I should call that an impression.

Q. Have you anything more than that in your mind about this case ?

A. I don't know that I have.

Q. You do not seem to remember about it when the counsel commenced asking you questions?

A. I did not know until he stated it ; I remember the circumstance of a man killing his wife in Rose street.

Q. You do not know anything about what his defense is ?

A. No, sir.

Q. That is all you remember about it, that a man did kill his wife in Rose street ?

A. Yes, sir.

(By Prisoner's Counsel) : Q. Would it require strong evidence to remove that opinion that you now entertain in regard to this case ?

A. It would.

(By the Court) : Q. Do you mean to say anything different from what you have heretofore, that while you may have this opinion in your mind, it would not bias or influence or prejudice you in any manner in the consideration of the evidence in the case ?

A. No, I do not suppose it would.

Q. You believe it would not ?

A. I believe it would not.

Q. You believe you would give full weight and effect to the evidence the same as though you had no opinion ?

A. Yes, sir.

The record then contains this statement : " The court from observation of the appearance of the juror, his age, intelligence, his manner on the stand, and his answers to questions, found that he was fair, impartial and unprejudiced, and held the challenge not true, to which the prisoner then and there excepted."

The further material facts appear in the opinion.

*William F. Kintzing*, for plaintiff in error. It was error to allow Edward H. Betts to be sworn as a juror. (*Greenfield* v. *People*, 74 N. Y., 277; *Freeman* v. *People*, 4 Den., 9; *Pender* v. *People*, 18 Hun, 560; *Rex* v. *Brandreth*, 32

How. St. Tr., 774; *Macfarland's Trial*, 8 Abb. Pr. [N. S.], 57, 58.) The court erred in admitting in evidence the testimony of the officer that the prisoner made a confession to him when he was seized in Wheeling, West Virginia. (1 Russ. on Crimes, 716; 2 R. S. (608), § 28; *Mandeville v. Guernsey*, 51 Barb., 99; 38 Barb., 102; *Lagrave Case*, 14 Abb. Pr. [N. S.], 333; 1 Russ. on Crimes, 962; Code of W. Virginia, 1868, p. 96; Coke's Litt., 253; Jenk., 166; 1 Inst., 482; *Osborn v. Robbins*, 36 N. Y., 365; *Forbay v. Ferguson*, 5 Hill, 154; *Richardson v. Duncan*, 3 N. H., 508; *Strong v. Grannis*, 26 Barb., 122; *Knapp v. Hyde*, 60 Barb., 80; *Thurman v. Lockwood*, 15 J. R., 256; *Tilly v. Damon*, 65 Mass. [11 Bush.], 247; *People v. McMahon*, 15 N. Y., 395; 9 Pick., 496; *Rex v. Warwickshall*, 1 Leach. C. C., 263; *Price v. State*, 18 Ohio, 418; *U. S. v. Mott*, 1 McLeans, 501; Taylor's Evidence, § 789; 1 Lewins C. C., 49; Session Laws 1869, chap. 678.)

*Benjamin K. Phelps*, district-attorney, for defendant in error. The juror objected to was competent. The opinion he had formed, however well settled, was not one which would disqualify him as a juror. (*O'Brien v. The People*, 36 N. Y., 276; *Lowenberg v. The People*, 27 id., 336; *Payne v. State*, 3 Humph. [Tenn.], 375; *Lohman v. The People*, 1 N. Y., 379; *People v. Allen*, 43 id., 28.) There was no error in admitting the confession of the prisoner to the officer. (*People ex rel. Lawrence v. Brady*, 56 N. Y., 182, 191; *People v. Rowe*, 4 Parker, 259; *Brewster's Case*, 7 Vt., 118; *Dow's Case*, 18 Penn. St.; *Ex parte Scott*, 9 Barn. & Co., 446; *People v. Rogers*, 18 N. Y., 9; *People v. Wentz*, 37 id., 303; *People v. Rodundo*, 44 Cal., 538.) The circumstances preceding the confession of Balbo were not such that it ought to have been rejected, as probably untrue and it was therefore properly admitted. (*People v. Wentz*, 37 N. Y., 309.)

ANDREWS, J.   The plaintiff in error was convicted at the New York Oyer and Terminer held in December, 1879, of

murder in the first degree in killing Maria Dichaco Balbo, his wife, by stabbing her in the neck with a knife on the night of September 30, 1879. The prisoner alleges two grounds of error, *first* that the court improperly overruled his challenge of Edward H. Betts one of the jurors in the case, and *second*, in admitting in evidence the prisoner's confession made to a police officer while the latter held him in custody, under the circumstances which will be stated hereafter.

1. The juror Betts was challenged by the prisoner for principal cause, and was examined in support of the challenge which was overruled, and the juror was thereupon challenged by the prisoner for favor. The juror was further examined on the challenge for favor, which was also overruled by the court and the prisoner excepted. The juror on his examination in chief testified in substance, that he read at the time in a newspaper an account of the murder and that he was of impression that the account he read was the report of the testimony taken before the coroner's inquest and that he had not talked the matter over with any person. In answer to a leading question put to him by the prisoner's counsel he said that he formed at the time a positive and clearly marked opinion in respect to the guilt or innocence of the accused which opinion was still in his mind, and that it would require strong evidence to remove the opinion he then entertained. The prisoner was an Italian, and the juror in answer to a question whether he had any prejudice in favor of or against the Italians as a race said : "that it was a race that he was not particularly fond of, and did not think much of, judging from those we have here." On his cross-examination by the district-attorney the juror said that he read the newspapers every day and read the account of this murder in the same way he read other items ; that he took no particular interest in the case ; that he did not know any of the parties connected with the transaction, and had no knowledge of the circumstances except as he had read them at the time ; that if a statement in the papers was contradicted in the next day's papers he believed the contradiction ; that his impression in the case was based on

the assumption that things reported are probably true ; that he did not make a great deal of distinction between an opinion and an impression ; that he should call an opinion of the truth or falsity of a statement he saw in a newspaper an impression, if he read it casually and it slipped out of his mind, and is afterwards revived ; that he did not know that he had anything more than that in his mind about this case ; that he did not know what the defense was, and that all he remembered was that a man killed his wife in Rose street. The juror on his examination on the challenge for principal cause said that he was not conscious of having any impression which would prevent his acting fairly and impartially in the case, and that he had no doubt that he could give a verdict upon the evidence without being influenced or biased by any opinion he had. At the conclusion of his examination by counsel on the challenge to the favor, the juror in response to questions of the court said that he did not suppose that any opinion he had would bias influence or prejudice him in any manner in the consideration of the evidence ; that he believed it would not, and that he could give full weight and effect to the evidence the same as though he had no opinion. The record states that the court thereupon " from observation of the appearance of the juror, his age, intelligence, his manner on the stand, and his answers to questions, found that he was fair, impartial and unprejudiced and held the challenge not true," and he was thereupon sworn as a juror.

In determining the question whether the court erred in overruling the challenges, it is important to bear in mind the changes which have been wrought by the acts chapter 475, of the Laws of 1872, and chapter 427, of the Laws of 1873, in respect to the legal sufficiency of certain causes of challenge to jurors, and in respect to the power of the court on appeal to review the decision of the trial court in allowing or overruling challenges. Prior to these statutes it was the established rule that a fixed and settled opinion of the guilt or innocence of a prisoner was a good cause of principal chal-

lenge and operated in law as a disqualification of a juror, and it was held not to be material how or upon what evidence the opinion was formed, provided it was fixed and definite, nor was the disqualification removed, although the juror should state upon his oath that he believed he could decide the case fairly and impartially upon the evidence without bias or prejudice from the opinion he had previously formed. (*Ex parte Vermilyea*, 6 Cow., 555; *People* v. *Mather*, 4 Wend., 232; *Freeman* v. *People*, 4 Denio, 9; *Cancemi* v. *People*, 16 N. Y., 501.) The law, said Marcy, J., in *People* v. *Mather*, "attaches the disqualification to the fact of forming and expressing an opinion, and does not look beyond to examine the occasion or weigh the evidence on which the opinion is founded." The rule that an opinion formed by a juror upon the guilt or innocence of a prisoner operated as a disqualification, was based upon the theory that such a prepossession of the mind was inconsistent with the exercise by the juror of a free and impartial judgment of the case upon the evidence, and the declaration of the juror that he believed he could decide the case uninfluenced by his previous opinion, was held not to remove the objection, for the reason assigned by Ch. J. Marshall (1 Burr's Trial, 416), that "the law will not trust him." But it was held in many cases before the recent statutes, that a hypothetical opinion or an impression simply of the guilt or innocence of the prisoner derived from rumor or from reading newspaper accounts of the transaction was not a cause of principal challenge, but the fact might be considered by the triers on a challenge to the favor, and their decision on the question of indifferency was final and not the subject of review. (*Bodine* v. *People*, 1 Denio, 281; *People* v. *Honeyman*, 3 id., 121; *Freeman* v. *People*, 4 id., 9; *O'Brien* v. *People*, 36 N. Y., 279; *People* v. *Thompson*, 41 id., 1.)

The act of 1872 was a clear departure from the law governing challenges for cause as it had been previously declared by the courts. It abrogates the rule that the

formation or expression by a proposed juror of an opinion of the guilt or innocence of the accused is *per se* a disqualification, and sufficient in law to sustain a challenge for principal cause. The act declares that "the previous formation or expression of an opinion or impression in reference to the circumstances upon which any criminal action at law is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, shall not be a sufficient ground of challenge for principal cause, to any person who is otherwise legally qualified to serve as a juror upon the trial of such action, provided the person proposed as a juror, who may have formed or expressed, or has such opinion or impression as aforesaid, shall declare on oath that he verily believes that he can render an impartial verdict according to the evidence submitted to the jury on such trial, and that such previously formed opinion or impression will not bias or influence his verdict ; and provided the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror." The act of 1873, passed the following year makes a further change in the previous law, by making all challenges triable by the court, and confers, as was held in *The People* v. *Thomas* (67 N. Y., 218) upon an appellate tribunal the right to review upon the facts the determination of the trial court.

It cannot be denied that the act of 1872 proceeds upon a different theory from that upon which courts and judges have acted in the decisions to which we have referred. It does not deny the principle which has its foundation in natural justice that jurors upon whose verdict may depend the lives or liberty of individuals accused of crime, should be impartial and free from any existing bias which may influence their judgment. The language of Lord COKE, often quoted, "that the juror must stand indifferent as he stands unsworn," expresses a rule of justice, as well as a rule of law. But the statute of 1872 assumes that a man may be a fair and impar-

tial juror although he has an opinion of the guilt or inno-
cence of the accused and that it is possible that he may
notwithstanding be able to set aside and disregard such
opinion, and weigh the evidence and determine the question
of guilt or innocence independently thereof, and uninfluenced
thereby. It is not for the court to pass upon the correctness
of this assumption. But I am not prepared to say that it
is contrary to human experience or the principles of mental
philosophy or that it may not frequently happen that per-
sons who have formed opinions of the guilt of an accused
person from reports or statements verbal or written, may
not as jurors lay aside their prepossessions, and not only
honestly and conscientiously endeavor to hear and decide
the case upon the evidence alone, but be able in fact to
divest themselves of the influence of their previous opinions.
It may I think be safely affirmed that the consciousness of
such prepossessions would in many cases, induce on the part
of jurors a more cautious consideration and a more charitable
construction of the evidence against the prisoner. The act of
1872 however, makes the court the ultimate judge upon this
question. If the juror, on being challenged for principal cause,
discloses on his examination that he has a fixed and definite
opinion in the case on the merits, and nothing further is
shown, then the rule of law which existed prior to the
statute of 1872 applies, and the court would be bound as
matter of law to reject him as incompetent. But if in
addition he states upon oath that he believes he can render
an impartial verdict on the evidence, and that such previ-
ously formed opinion will not bias or influence him as a juror,
the question of his competency is then to be determined by
the court as a question of fact. In determining the question
the declaration of the juror is to be considered, but it is not
controlling. But the decision of the trial judge is subject to
the supervisory jurisdiction of the court upon appeal, and
the appellate tribunal in reviewing it, is bound to say on its
own responsibility upon a fresh examination of the evidence,
giving due weight to the circumstance that the trial judge

had the juror before him, whether in its judgment the question of fact was properly decided. In reviewing the decision of the trial judge no certain rule can be laid down by which the appellate court is to be guided. The determination of the question presented must depend in a great measure upon the circumstances of the particular case. The cardinal rule, that the accused is entitled to be tried by a fair and impartial jury, is always to be borne in mind. There may be cases where the opinion of the juror has been formed under circumstances which, in the judgment of all reasonable men, will prevent him however conscientious he may be, from judging and deciding the case irrespective of his prepossessions. The case of a juror who was an eye-witness to the transaction, or whose opinion was formed upon his personal knowledge of the criminating facts, are examples. The circumstances under which the opinion was formed, its strength, the fact whether the juror has any personal feeling against the prisoner, or exhibits any pride of opinion which may lead him to give too little or too much weight to evidence in favor of or against the accused, these and many other considerations will enter into the judgment of the court in passing upon the question of the juror's competency. In short, under the statute of 1872, the competency of a juror who has formed an opinion is in all cases a question of fact and not of law when he makes the declaration specified in that statute. This fact is to be determined, in the first instance by the trial judge, and afterwards in case of appeal, by the court of review.

The cases of *The People* v. *Thomas* (67 N. Y., 218), and *The People* v. *Greenfield* (74 id., 277), illustrate the function of this court in reviewing the decision of the trial judge upon challenges to jurors under the acts of 1872 and 1873. In the *Thomas Case* the decision of the trial judge was affirmed, and in the *Greenfield Case* his decision was reversed. The opinion of the juror in the *Thomas Case*, was not fixed and absolute, but was hypothetical, and no circumstances were shown which created

any doubt upon the part of the court of his ability to decide the case upon the evidence impartially, without bias from his previous impression. In the *Greenfield Case* there was as is stated in the opinion no question of law involved, but merely a question of fact, viz. : whether, upon the evidence and surrounding circumstances the jurors Betts and Jennings were fair and impartial jurors. The case had been once tried and the jury had disagreed. It had excited great interest in the community where the crime charged was committed. The fact that there had been a felonious homicide was admitted. The question to be tried was whether it was committed by the prisoner, and this depended upon circumstantial evidence. The jurors challenged lived near the scene of the murder. They had heard the circumstances of the crime talked about and had read parts of the published testimony on the first trial and each had an impression or opinion of the guilt of the accused which it would require evidence to remove. This court, upon a review and consideration of the facts disclosed in that case were of opinion that the challenges should in the exercise of a discreet and careful judgment have been sustained, and the conviction was for this reason reversed. In the *Thomas Case* this court was of opinion that the decision of the trial judge on the challenge was justified by the facts, and in the *Greenfield Case* that there was at least so much doubt in respect to the competency of the jurors challenged, that the challenges should have been sustained. The cases are entirely harmonious and consistent, the court upon different facts reaching different conclusions in the respective cases.

In the case now before us, we are of opinion that the challenges to the juror Betts were properly overruled. Such opinion as he had, was formed without reflection, upon a casual reading of a newspaper report of the testimony before the coroner some months before the trial. He evidently had no personal prejudice against the prisoner, and had taken no particular interest in the case. The opinion, if it was anything more than an impression,

was a hastily formed judgment upon statements which he assumed to be true from seeing them in a newspaper, but there was apparently no such pre-judgment as would prevent him as a juror from deciding the case fairly and impartially upon the evidence. The statutes of 1872 and 1873 were passed to facilitate the selection of jurors which, in some cases was attended with great difficulty and delay by reason of the stringent rule which had obtained as to the disqualifying effect of an opinion formed in the case. But the Legislature did not intend to interfere with the fundamental right of an accused person to be tried by a fair and impartial jury. And if in exercising the jurisdiction and powers conferred by these statutes, courts and judges proceed on the humane principle of the common-law, giving to the prisoner the benefit of a reasonable doubt, there will be little difficulty in so administering the law that the purpose of the statute will be attained without subjecting accused persons to the peril and injustice of being tried by prejudiced jurors.

The fact that the juror may have had some prejudice against the Italian race was not we think, a disqualifying circumstance. An opinion that the prisoner's character was bad is not a ground of principal challenge. (*People* v. *Lohman*, 1 N. Y., 379; *People* v. *Allen*, 43 id., 28.) The fact that the juror did not like the race to which the prisoner belonged was quite too inconclusive to justify a finding that he was incompetent.

2. The prisoner on the night of the murder left the city of New York, where he resided and where the murder was committed and went to Wheeling, West Virginia, and was followed there by police officers who arrested him at that place on the second day after the homicide without warrant and started with him by rail for New York. While upon the cars and before reaching this State the prisoner made a confession to one of the officers having him in charge to the effect that he killed his wife, "that she did not like him, and that he gave her only one stab." The officer to whom the confession was made was called for the People

to prove the confession, and the evidence was objected to by the prisoner on the ground that at the time it was made he was under illegal arrest, and that the confession was for this reason inadmissible. The objection was we think properly overruled. It was affirmatively shown that no promises were made, or threats or menaces used to induce the confession. If the prisoner was in legal custody at the time the confession was made it is not denied that it would have been admissible. It has been held in several cases in this court, that a confession by a prisoner is not to be deemed involuntary, or made under duress, because made when he was in custody, or to the officer who has him in charge. (*People* v. *Rogers*, 18 N. Y., 9; *People* v. *Wentz*, 37 id., 303.) We perceive no principle upon which it can be held that the confession if otherwise admissible can be rejected for the reason that the officer to whom it was made held the prisoner in custody upon an invalid process, or without any process or lawful right. The confession if voluntary is admissible whether made to an officer or private person. The fact that the arrest was illegal has no relevancy, if the confession was voluntary. The People are not precluded from availing themselves of a voluntary confession because the officer or person to whom it was made was exercising an illegal restraint over the prisoner at the time.

We have assumed in considering this question that the arrest of the prisoner under the circumstances disclosed was technically illegal, but we do not decide this question. Conceding that the removal of the prisoner from West Virginia was an act in violation of the sovereignty of that State, the consideration would still remain that a felon may be arrested without warrant, either by an officer or private person, for the purpose of bringing him to justice. (*Holley* v. *Mix*, 3 Wend., 350; *Burns* v. *Erben*, 40 N. Y., 463.) And it has been held in several cases that a prisoner charged with crime is not entitled to be discharged on the ground that he was improperly apprehended in a foreign jurisdiction and brought into the jurisdiction where the crime was

committed and where the application for his discharge was made. (*Parker* v. *Rowe*, 4 Parker Cr. R., 253; *Ex parte Scott*, 9 B. & C., 446; *Dow's Case*, 18 Penn. St., 37; *Brewster's Case*, 7 Vt., 118.)

The points considered are the only ones urged by the prisoner's counsel. The case was presented to the jury in all its aspects in a careful charge by the learned judge who presided at the trial. The evidence of deliberation although not perhaps conclusive, was we think sufficient to justify the conviction. There is no error disclosed by the record, and the judgment should therefore be affirmed.

All concur. CHURCH, Ch. J., and FOLGER, J., say that as there are some expressions in the opinion with which they do not agree, while concurring in the main argument, they concur in the result.

Judgment affirmed.