## HALSTED *v.* MANHATTAN RY. CO.

(*Superior Court of New York City, General Term.* June 27, 1890.)

JURY—COMPETENCY OF JURORS.

　　A juror in a civil case who had made up his mind against defendant, and whose opinion against it is so strong as to require evidence to remove it, is incompetent. Distinguishing *McKinney* v. *Railroad Co.*, 6 N. Y. Supp. 168.

Appeal from jury term.

Action by John F. Halsted against Manhattan Railway Company to recover damages for injury to plaintiff's property by reason of the construction and maintenance of defendant's elevated railway. There was a verdict for plaintiff, and from the judgment entered thereon, defendant appeals.

Argued before FREEDMAN and TRUAX, JJ.

*Davies & Rapallo,* for appellant. *Roger Foster,* for respondent.

TRUAX, J. One of the jurors was examined touching his qualifications as a juror, and testified, in substance, as follows: That he knew Division street, in the city of New York, the street on which the property was situated; that he had formed an opinion as to the effect of the elevated railroad upon property in narrow streets through which the railroad passes, (this opinion was against the road;) that he thought it damaged property in narrow streets; that it would require evidence to remove from his mind that opinion; that he came to the trial of this case with the opinion in his mind that the property owner had a just claim against the railroad, and that it would require evidence on the part of the railroad to remove that opinion; that this opinion was founded upon information that he had received from friends of his who lived on these narrow streets, and from the fact that houses have rented for very much

less since the railroad was built than before; that he had no personal knowledge
of the facts, but that he should assume, if he had property there, that he
would have lost something; that he would not care to live on a street where
the railroad passed by the house; that if the defendant could prove to him
that the premises mentioned in the complaint were worth more now than be-
fore the road was built, he would not give a verdict against the road; but
that unless the defendant satisfied him that it had not injured the property,
he would give a verdict for the plaintiff; that he came to the trial with the
opinion in his mind that the plaintiff was entitled to recover unless the de-
fendant produced evidence sufficient to remove that opinion.   In answer to
certain questions put to him by counsel for plaintiff, he said that he thought
that he would be capable of deciding this case on the evidence, independent
of what he had heard before the trial, and give an impartial verdict upon the
evidence; that he was aware that by the law he would be obliged to disregard
what he had heard, and go upon the evidence; that his mind was not so firmly
made up that he would give a verdict contrary to the evidence, but that he
came there prejudiced against the road; that this prejudice could be removed
with evidence; that he could free his mind from that prejudice when he be-
gan to hear the evidence, and that he could observe the rule of law that the
burden of proof is on the plaintiff; that he had not formed any opinion as to
the extent of the injury done, measured in dollars and cents; that he had
often expressed the opinion that the defendant was a wrong-doer as respects
this property, but that he did not know anything about it.   The challenge of
the defendant was overruled, the juror accepted, and the defendant duly
excepted.   When trial by jury first was begun in England, it was the custom
to take jurors who were acquainted with all of the facts, and it was not until
trial by jury had obtained for some length of time that persons who were un-
acquainted with the facts were called as jurors.   They were not sworn as
witnesses, but they were placed on the jury, and those other persons who
were unacquainted with the facts, if any such there were on the jury, were
removed from it.   After a while, this method of trial by jury went out of cus-
tom.   It is difficult to determine when it was that persons who were totally
ignorant of the facts of the case were first called to serve upon the jury.   "But
in the time of Fortescue," says Hallam in his "Middle Ages," (volume 2, p.
379,) "whose treatise, De Laudibus Legum Angliæ, was written soon after 1440,
we have the clearest proof that the mode of procedure before jurors by *viva
voce* evidence was the same as at present."   The following passage from
Fortescue is then cited by Hallam:   "Twelve good and true men, being
sworn in as in the manner above related, legally qualify, that is, having over
and besides their movable possession in lands sufficient wherewith to main-
tain their rank and station, neither suspected by or at variance with either of
the parties, all of the neighborhood, there shall be read to them in English by
the court the record and nature of the plea at length which is depending be-
tween the parties, and the issue thereupon shall be plainly laid before them,
concerning the truth of which those who are so sworn are to certify to the
court; which done, each of the parties, by themselves or their counsel, in
presence of the court, shall declare and lay open to the jury all and singular
the matters and evidences whereby they think they may be able to inform the
court concerning the truth of the point in question, after which each of the
parties has a liberty to produce before the court all such witnesses as they
please, or can get to appear on their behalf, who, being charged upon their
oaths, shall give in evidence all that they know touching the truth of the facts
concerning which the parties are at issue, and, if necessity so require, the
witnesses may be heard and examined apart till they shall have deposed all
that they have to give in evidence, so that what the one has declared shall
not inform or induce another witness of the same side to give his evidence in
the same words or to the very same effect.   The whole of the evidence being

gone through, the jurors shall confer together at their pleasure, as they shall think most convenient, upon the truth of the issue before them, with such deliberation and leisure as they can well desire, being all the while in the keeping of an officer of the court, in a place assigned them for that purpose, lest any one should attempt by indirect methods to influence them as to their opinion, which they are to give into the court. Lastly, they are to return into court and certify the justices upon the truth of the issue so joined in the presence of the parties, if they please to be present, particularly the person who is plaintiff in the cause. What the jurors so certify, in the laws of England, is called the verdict." Fortes. de Laud. c. 26. It is to be noted that the procedure on trial by jury as given by Fortescue is substantially the same as that which now obtains. Fortescue, in chapter 25, tells how a jury is to be impaneled, and then goes on to say that "being so impaneled, and appearing in court, either party may except against any particular person; as he may at all times and in all cases, by alleging that the person so impaneled is of kin, either by blood or affinity, to the other party, or in some such particular interest as he cannot be deemed as an indifferent person to pass between the parties; of which sort of exceptions there is so much variety as is impossible to show in a small compass. If any one of the exceptions be made to appear to the court to be true and reasonable, then he, against whom the exception is taken, shall not be sworn, but his name shall be struck out of the panel. In like manner shall be done with all the rest of the panel, until 12 be sworn, so indifferent as to the event of the cause that neither of the parties shall have reasonable matter of challenge against them."

Coke says that the principal challenges to the poll may be reduced to four heads. (1) For respect of honor. (2) For want of default. (3) For affection or partiality. (4) For crime or delict. That the causes of favor are infinite, and that the rule of law is that the juror must stand indifferent, as he stands unsworn. Co. Litt. 156*b*, 157*b*. In the case of *McKinney* v. *Railroad Co.*, 6 N. Y. Supp. 168, to which our attention was called by the counsel for the respondent, the court said that the challenge to the juror was properly overruled. The juror stated that notwithstanding his sympathies, he could render an impartial verdict upon the evidence. It will be noticed that in this case the juror had but sympathy for the plaintiff. And the court also said (and to this the counsel did not call our attention) that the juror stood on the extreme limit of competency. Now, if this juror who had only sympathy stood on the extreme limit of competency, it seems to us that a juror who had made up his mind against the defendant, and whose opinion against the defendant was so strong that it would require evidence to remove it, is not on the limit of competency, but is beyond it, and is not competent. The juror did not stand indifferent to the parties. We are of the opinion that the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

It was said by Judge BEARDSLEY in *Freeman* v. *People*, 4 Denio, 35, that if triers "find that bias actually exists in the mind of the juror, although it is proved only by the formation of a hypothetical opinion, they may and ought to reject him. Some minds are so constituted that such an opinion would exert a controlling influence in the jury-box, while with others its influence would be neither seen nor felt. * * * The triers must find that the juror stands impartial and indifferent, or they should reject him." See, also, *Blake* v. *Millspaugh*, 1 Johns. 316; *Pringle* v. *Huse*, 1 Cow. 433, and note at page 436; *Coleman* v. *Hagerman*, cited and commented on in *Ex parte Vermilyea*, 6 Cow. 564, and in *People* v. *Mather*, 4 Wend. 243.