## JOHN C. COURTNEY, ET AL. *v.* STATE OF MARYLAND

[No. 159, October Term, 1945]

*Decided July 23, 1946.*

The cause was argued before MARBURY, C. J., DELE-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Sigmund Levin,* with whom were *Paul Berman, Gilbert I. Friedel* and *Theodore B. Berman* on the brief, for the appellants.

*J. Edgar Harvey* and *Philip T. McCusker, Assistant Attorney General,* with whom were *William Curran, Attorney General, J. Bernard Wells* and *Alan H. Murrell, State's Attorney* and *Assistant State's Attorney,* respectively for Baltimore City on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellants were tried in the Criminal Court of Baltimore City upon charges of unlawfully making and selling books or pools on horse races and with keeping a house for the purpose of betting and gambling. Upon conviction by the court, sitting as a jury, they were each fined $1,000. They offered no evidence and did not testify. On this appeal four questions are presented by objections to rulings of the trial court.

On October 25, 1945, Lieutenant Emerson of the Baltimore City Police Department accompanied by several

officers, under authority of a search warrant, entered and searched the premises 1216 St. Paul Street, the first floor of which was ostensibly occupied by Motor Credit Company and Homestead Improvement Company. The search warrant was offered in evidence over objection. It is conceded that the warrant on its face showed probably cause; the objections now made are that it contained, in addition to provisions for search of the premises and seizure of property, descriptions of two men and a woman, with directions to arrest them "and all other persons who may be found in the said premises who may be participating in the bookmaking activities." It is contended that the inclusion of these provisions rendered the warrant void. It is also contended that statements in the warrant tending to incriminate Silverman should not have been admitted as against Courtney. Officer Battaglia testified that for nine days preceding the day of the raid he saw Silverman enter, by means of a key, or leave the premises, and on one occasion saw him, when leaving, tear up and throw away certain papers which the witness later picked up and pieced together. He identified these papers as a scratch sheet and a slip containing a number of race bets upon horses running that day at various tracks. These papers were offered in evidence over objection.

At the time of the raid no one was found in the premises, and the officers found no racing paraphernalia or similar *indicia* of gambling. There was a telephone in the front office and four telephones in the back office, together with a desk, electric fan and radio. The back room was full of (tobacco) smoke, and the telephones were hot to the touch. A pair of iron doors, constructed with slots for barring, separated the two rooms. An unlocked side door gave access to the house next door. The telephones in the back room were ringing, and Officer Trencamp testified, over objection, that he answered them. During the period of an hour various persons calling from places unknown placed $85 in bets with him. Over objection, he testified that some of the callers asked for Nick, others

4

for Nat. In the desk drawer the officers found a bill to a Mr. Courtney. Lieutenant Emerson got in touch with Courtney, who told him that he owned the furniture in the premises and had loaned it to two brothers named Harris, who were supposed to operate Homestead Improvement Company; that he rented the first floor, and had sublet the back room for $30 a month. He denied any knowledge of the iron doors, but admitted he had signed the application for the four telephones on behalf of his tenants.

On the following day, October 26, 1945, Lieutenant Emerson obtained a "John Doe" warrant from a police justice in Baltimore City, authorizing the arrest of a white man described as "about 35 years of age; about 5 feet 8 inches tall, weighing about 160 pounds," the man who had been seen entering and leaving the premises. Silverman was arrested on this warrant on January 8, 1946. He denied all knowledge of the premises, but stated, in response to questioning, that he had been making book for about a month; that he backed the book himself, and did not take bets on commission. The appellants contend that this arrest was illegal, and that the statements made to Lieutenant Emerson were inadmissible.

We find no merit in the contention that the search warrant was improperly admitted in evidence. In the first place, it does not appear from the record that the trial court ever ruled on the objection. When the warrant was offered, counsel for the appellants said: "We object to it because there is nothing tying us up with it. Will your Honor take it subject to exception? I will make a motion to strike it out later." The court asked: "On what ground?" and counsel replied: "There is nothing in there tying us up with it." The Court did not sustain or overrule the objection. If the warrant was admitted subject to the limited objection, as requested, there was no subsequent motion to strike it out. Although, under the present rules, exceptions are no longer necessary, it is still necessary that timely objections be

made and ruled upon. In the absence of such objections and ruling there is nothing for this court to review. *O'Connor v. Estevez,* 182 Md. 541, 546, 35 A. 2d 148. Moreover, it is not contended that the search warrant did not show probable cause on its face, to justify a search of the premises. Compare *Wood v. State,* 185 Md., 280, 44 A. 2d 859. It was clearly admissible as a preliminary to the testimony as to what was found upon the premises. In the absence of specific objection, we find it unnecessary to discuss the contentions that it was inadmissible because it contained authority to make arrests, which were not in fact made under its authority, or that it contained statements tending to incriminate only one of the accused.

In regard to the admission in evidence of the scratch sheet and slip containing race bets which were discarded by Silverman as he left the premises, we find no error. It is doubtless true, as contended, that the mere possession of these papers would not be sufficient to establish the guilt of either party charged. But they were admissible as one of a series of circumstances tending to establish that bookmaking was being conducted on the premises.

The appellants earnestly contend that evidence as to the placing of bets over the telephone with Officer Trencamp was inadmissible, because the bettors were not identified. In *Thompson v. State,* 184 Md., 555, 42 A. 2d 113, it was held that an alleged conversation with the accused over the telephone, presumably containing damaging admissions, was inadmissible where the witness could not identify the person to whom he was speaking. This was likewise the situation in *Archer v. State,* 145 Md., 128, 149, 125 A. 744. In *Baum v. State,* 163 Md. 153, 161 A. 244, where an officer called up the suspected premises and placed a bet with a person whom he could not identify, the conversation was held admissible. In *Rowan v. State,* 175 Md. 547, 3 A. 2d 753, testimony obtained by wire-tapping was held inadmissible, but in that case there was a failure to identify the telephone

number from which the alleged conversations emanated, and a failure to connect the appellants with those conversations. In *Beard v. United States,* 65 App. D. C. 231, 82 F. 2d 837, officers overheard bets being called in by telephone. The court said (65 App. D. C. at page 235, 82 F. 2d at page 841) : "The case, therefore, is not one in which evidence of a telephone conversation is introduced against a particular person. In such case, it is, of course, necessary to establish the identity; but here the evidence, as we have seen, was offered to show that the place in question was a gambling place and that some or all of the persons found therein were engaged in taking bets in violation of law. For these purposes it was proper." Similar questions have been considered by the California courts, where it has been held that bets called in during a raid constitute a part of the *res gestae.* See *People v. Reifenstuhl,* 37 Cal. App. 2d 402, 99 P. 2d 564; *People v. Kelley,* 22 Cal. 2d 169, 137 P. 2d 1, 5; and *People v. Klein,* 71 Cal. App. 2d 588, 163 P. 2d 71, 73. We think these cases state the true rule, rather than the cases of *Bloss v. State,* 127 Tex. Cr. R. 216, 75 S. W. 2d 694, and *Cumpton v. Muskogee,* 23 Okla. Cr. 412, 225 P. 562, cited by the appellants.

Finally, the appellant Silverman contends that his confession that he was engaged in bookmaking, made after his arrest, was inadmissible because his arrest was upon a void warrant and hence illegal. We need not pass upon the question whether the warrant was void; for the purposes of this case the State concedes it, but takes the position that this fact is immaterial. It is perfectly clear under the authorities that the mere fact of arrest does not constitute duress, or render a confession made while under arrest inadmissible, if voluntarily made. *McCleary v. State,* 122 Md. 394, 401, 89 A. 1100; *Toomer v. State,* 112 Md. 285, 76 A. 118; *Young v. State,* 90 Md. 579, 587, 45 A. 531; *United States v. Tod,* 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221; 3 *Wigmore, Evidence,* 3d Ed., Sec. 482. And the authorities quite uniformly hold that a confession is admissible, if voluntarily

made while under arrest, even though the arrest may be illegal. *Balbo v. People,* 80 N. Y. 484, 499; *United States v. Lee Hee,* 2 Cir., 60 F. 2d 924; *State v. Raftery,* 252 Mo. 72, 158 S. W. 585; *People v. Klyczek,* 37 Ill. 150, 138 N. E. 275; 3 *Wigmore, Evidence,* 3d Ed., Sec. 823 (b); 2 *Wharton's Crim. Evidence,* 11th Ed., Sec. 610.

There is nothing in *Wright v. State,* 177 Md. 230, 9 A. 2d 253, 256, to the contrary; there the confession was held inadmissible because the burden of proof to establish that it was voluntary was not discharged by the state. The mere fact that the "[warrant] of investigation" was held void did not render the confession inadmissible. The Maryland statute as to search warrants (Art. 35, Sec. 5) which changed the common-law rule *(Leon v. State,* 180 Md. 279, 23 A. 2d 706) is not applicable to arrests in general, but even under that statute a voluntary surrender of incriminating evidence may make such evidence admissible. Compare *Blager v. State,* 162 Md. 664, 161 A. 1, and *Heyward v. State,* 161 Md. 685, 158 A. 897.

*Judgment affirmed, with costs.*