## MERCHANT *v.* STATE

[No. 225, September Term, 1957.]

62

*Decided May 21, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Noah A. Hillman* and *John Blondell* for the appellant.

*Charles B. Reeves, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, C. Osborne Duvall, State's Attorney for Anne Arundel County,*

and *Clarence L. Johnson, Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal entered November 6, 1957, is from a judgment and death sentence imposed by the Circuit Court for Anne Arundel County, after a conviction of rape in a case tried by two judges of that Court, sitting without a jury. On March 17, 1958, the State moved for an order to correct the record pursuant to Rule 827 of the Maryland Rules, and filed an affidavit of the State's Attorney in support of the motion. The motion alleged that the appellant had included in his record extract the following testimony in cross-examination of one of the State's witnesses, Lieutenant Kinsey, a police officer:

"55. Lieutenant, did you or Captain Wellham, to your knowledge, at any time state to the defendant why a statement was wanted? A. We advised him that a statement would be *easier* in a court of law against him, and that was the only thing we mentioned to him. 56. You advised him that a statement by him would be *used* in a court of law against him, and that is the only thing you told him that you wanted the statement for? A. *Yes sir,* now, he read the heading of the statement which we have at the heading of the statement." (Emphasis supplied).

The supporting affidavit by the State's Attorney declared that he had no recollection that Lieutenant Kinsey used the word "easier"; that Judge Michaelson had made available to him the notes taken at the trial by Judge Michaelson; and that in these notes the Judge had paraphrased the statement of the witness as "we advised him that a statement would be *used* in court against him. He read the heading of the statement." (Emphasis supplied). The appellant filed an answer to the motion, supported by the affidavit of one of the defense counsel that he had a personal recollection that the testimony in question was as indicated in the record extract; and that the court stenographer had repeated into a phonographic instrument the testimony in question and transcribed it in

writing up the record in the exact form indicated in the record extract.

On March 31, 1958, we passed an order referring the matter back to the Circuit Court "for determination and settlement of the difference as to whether or not the disputed portion of the record (the answer to question 55 of the transcript) truly discloses what occurred in said court, and for certification by Judge Michaelson of his determination of that matter in order that the record may conform, or be made to conform, to the truth." Rule 826 e of the Maryland Rules provides that although it is not ordinarily necessary for the record on appeal to be approved by the lower court, "* * * if any difference arises as to whether the record truly discloses what occurred in the lower court, the difference shall be submitted to and settled by the lower court and the record made to conform to the truth." Before the case was reached for argument in due course on April 15, 1958, Judge Michaelson filed in this Court a certificate in which he stated that he had had the court stenographer play the disc on which the testimony in question was recorded, that the exact word in controversy was so blurred that the court could not "distinguish or understand" it; that the stenographer could not say positively that she had made an accurate recording of the word, but that it "sounded like 'easier'" to her. Judge Michaelson further certified that he had consulted his own notes, written in long-hand at the time of the trial, and that he had understood and written the word "used" in the answer to the question. Judge Evans also stated that it was his recollection that no such word as "easier" was used by the witness in answer to the question. The lower court thereupon determined that the correct word was "used", as stated in the affidavit of the State's Attorney, and certified that the record would conform to the truth by substitution of that word. The certificate was signed by both the judges who presided at the trial.

Rule 826 e seems to contemplate that such a certification by the presiding judge, or judges, should be final and controlling. But if we assume, without deciding, that it is not, we may point out that not only was the word "used" understood by both of the trial judges and the State's Attorney,

but that defense counsel repeated the answer *verbatim* in his next question, containing the word "used", and the witness agreed to the correctness of the repetition. Again, defense counsel at a later point in the trial referred to testimony (which he attributed to Captain Wellham) that the accused had been told that his statement "was going to be used against him in court." Had the witness spoken the word "easier", it is almost inconceivable that defense counsel would have failed to refer to or rely upon it in support of their objection to the admissibility of the statement obtained from the accused, or at some point in the subsequent proceedings, and the record does not show any such reference. Even if the word "easier" had been spoken by the witness, and not heard by the triers of fact, it might be argued that failure to call the point to the court's attention was a waiver of the objection on that ground. But in any event the fact certified by the trial judges is clearly supported by the intrinsic and extrinsic evidence, and it would appear that the court stenographer either did not correctly understand the witness in the first instance or incorrectly transcribed the blurred word she recorded. We shall, therefore, deal with the record as corrected.

The only questions raised on appeal are the admissibility of the purported confession, and the sufficiency of the evidence as to the identity of the accused. The questions raised seem to require a rather detailed statement of the evidence. The prosecuting witness is a married woman, with two children, aged ten and twelve, who lives with her husband in the outskirts of Glen Burnie. On the morning of July 25, 1957, she cooked breakfast for her husband and he left the house at his accustomed time, 5:30 A. M. At about 6:00 A. M. she went back to bed and fell asleep. The next thing she knew, a man jumped on top of her in the bed. He had a knife in his hand and threatened to kill her if she made any noise. He had part of his face, from the nose down, covered with a pillow slip. She testified she had left a clean pillow slip on a living room chair. He pulled up her gown and had intercourse with her. The witness identified as her own a knife which was subsequently recovered from a cupboard in the house where the accused was arrested. It had

a black, burned point, as her children had burned it making plastic airplanes. She had used the knife in preparing breakfast on the morning in question, and left it lying on the kitchen cabinet. After intercourse began, the witness testified she kept struggling and protesting. His organ penetrated her body. At one point the pillow slip came down under his nose. He kept the knife in his hand and shoved it into her neck at one time. After completing the sexual act, he jumped off the bed and "said he wanted five dollars for bus fare." He was wearing a white tee shirt and khaki pants. She did not see any underwear. He wore dark blue socks with white stripes "with a little speck in it." He did not have shoes on, and she saw a hole at the big toe of his right sock. He told her he had left his shoes in the woods. She got $5.00 from her wallet, and had $6.00 left. He took all the money. One of the children started sneezing, and he ran out of the door into the woods. After fixing the children's breakfast, she tried to telephone her husband, but could not reach him. She went to her sister's house next door and told her what had happened. The sister testified that she was "crying" and "very white". It was then about 8:00 A. M.

The witness, Quarles, testified he lived about a block away from the scene of the crime. He and his wife saw the appellant about 7:30 A. M., on a path near his house. He knew the appellant and spoke to him. Both had been recently laid off from work, and the appellant owed him $1.90. The appellant gave the witness $2.00 and received two nickels change. The appellant had on dark trousers and a light shirt.

Mrs. White, the appellant's mother-in-law, testified that the appellant came to her house between 7:30 and 8:00 A. M. and paid her $8.00 on account of what he owed her. He was wearing a tee shirt and khaki trousers. Between 7:00 and 8:00 A. M., the appellant went to a tavern in the neighborhood and bought a pint of wine for 50¢ and received 50¢ in change. Police officers apprehended the appellant at Mrs. White's home at 11:20 A. M., hiding in a closet. He was wearing khaki trousers, a tee shirt, and socks without shoes. There was a large hole in the toe of the right sock and a smaller hole in the toe of the left sock. Examination revealed

a blood stain on the left cuff of his trousers, and blood and seminal stains on his shorts. The appellant was identified by the prosecuting witness in a line up and at the trial. She had seen the appellant only once before.

There was sporadic questioning by other officers during the day, in which the appellant made no admissions. Several of these officers noted that the appellant stuttered a little but they had no difficulty understanding him. They all denied making any threats, promises or inducements. Lieutenant Kinsey testified he talked to the appellant at about 8:30 P. M. Appellant asked him "would it be easier on me if I told the truth?" The Lieutenant said he did not know, and said: "I'm not making you no promises, but I can advise you that the truth hurts no one." Some time later, appellant agreed to give a statement. Captain Wellham then came in and questioned the appellant, in the presence of Lieutenant Kinsey. He typed the questions and answers. The taking of the statement began about 9:50 P. M. and was completed about 11:35 P. M. No one left the room, but coffee was brought in for all, including the appellant. No threats, promises or inducements were made to the appellant.

The statement, admitted in evidence over objection, contained a number of admissions. The appellant stated that he and his wife were living with his mother-in-law, but he had not been home for several days. He had been sleeping in "junk" or abandoned cars. He went to the home of the prosecuting witness and told her he wanted $5.00. He knew her by sight. She gave him $11.00. He followed her into her bedroom and she allowed him to have intercourse with her. He did not threaten her. He said he owned the knife with the black point, and laid it on the table beside the bed while having intercourse, then put it back in his pocket. He said he had a pillow slip in his pocket which he found outside the house. He used it to wipe his face. He had never had intercourse with the witness before and had never borrowed money from her before. He admitted paying Mr. Quarles $1.90 and buying the wine. He gave Mrs. White $8.00.

It may be doubted whether the statement was a confes-

sion, although it contained a series of admissions. We have noted that there is a clear distinction. In *Delnegro v. State,* 198 Md. 80, 87, we said: "An admission is an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction, and which tends to establish the ultimate fact of guilt. A confession implies that the matter confessed constitutes a crime." See also *Ford v. State,* 181 Md. 303, 307; *Kier v. State,* 213 Md. 556, 559; 3 *Wigmore, Evidence* (3rd Ed.), § 821, p. 243; 2 *Wharton, Criminal Evidence* (12th Ed.), § 398; 2 *Underhill, Criminal Evidence* (5th Ed.), § 385. It is clear that the statement in the instant case did not confess the crime of rape, or indeed, any crime except, perhaps, adultery. It admitted the receipt of money and the intercourse, but asserted that both were voluntary on the part of the prosecuting witness. But if we assume, without deciding, that the strict rule that the State must establish that a confession is voluntary, before it can be admitted in evidence, is applicable in the instant case, we find no error in the ruling of the trial court.

The appellant argues that the prolonged questioning amounted to coercion. There was no evidence of mistreatment or actual violence, as in *Jackson v. State,* 209 Md. 390, and it is well settled in this State that lengthy interrogation does not of itself make a confession involuntary. See *Cox v. State,* 192 Md. 525; and *James v. State,* 193 Md. 31. The chief contention is based on the theory of an inducement. The appellant relies heavily upon the cases of *Edwards v. State,* 194 Md. 387, and *Kier v. State, supra,* but in both those cases the inducement was implied from the circumstances and neither decision was rested upon the mere form of words. In the *Kier* case, *supra,* we said (p. 562): "It may well be that the implication of a threat or promise should not be drawn from the word 'better' alone. In some contexts, at least, the word 'better' might refer to moral or spiritual rewards. The inner psychological pressure of conscience to tell the truth does not constitute coercion in the legal sense. Cf. *James v. State,* 193 Md. 31, 42. See also *Wigmore, Evidence* (3rd ed.), §§ 832, 840; *Underhill, Criminal Evidence* (5th ed.), Sec. 388." See also note, 38 Geo. L. J. 686, com-

menting upon the *Edwards* case, and 2 *Wharton, Criminal Evidence* (12th ed.), sec. 367. In the instant case the statement of the officer did not contain the word "better". In reply to the question by the accused if it would be "easier" if he told the truth, the officer replied that he did not know and could make no promises. True, this was followed by a statement that "the truth hurts no one", a generalization that is not necessarily so. We think, however, that the generalization cannot be construed as a promise of leniency in the subsequent proceedings, particularly where the accused had been told that any statement would be used against him.

As we said in *Kier v. State, supra,* (p. 562): "Exhortations to tell the truth, or 'I want you to tell the truth', have been held not fatal. *Nicholson v. State,* 38 Md. 140. Cf. *Ross v. State,* 67 Md. 286, *Rogers v. State,* 89 Md. 424, 427, and *Deems v. State,* 127 Md. 624, 630." In *Deems v. State, supra,* an officer asked the accused "why he didn't tell the truth," that *"the truth would hurt no one"*. (Italics supplied.) Judge Urner, for the Court, held that this statement did not render the confession inadmissible. This case is directly in point. See also *Martin v. United States,* 166 F. 2d 76 (*C. C. A.,* 4th).

Obviously, the admissions of the accused establish his identity as the person who had intercourse with the prosecuting witness, and they are strongly corroborated by the circumstantial evidence in the case. The issue whether the intercourse was forcible and without the consent of the prosecuting witness was one of credibility, properly to be resolved by the triers of fact. We cannot find that they were clearly wrong. Cf. *Kier v. State,* 216 Md. 513, and cases cited. We find no merit in the appellant's contention that the punishment was excessive. It was within the statutory limit prescribed by Code (1957), Art. 27, sec. 461. "* * * the trial court alone has the right to determine the penalty within these limits." *Reid v. State,* 200 Md. 89, 92.

*Judgment affirmed.*