PRESCOE *v.* STATE

[No. 235, September Term, 1962.]

*Decided May 24, 1963.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*George L. Russell, Jr.*, for appellant.

*Russell R. Reno, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Dene L. Lusby, State's Attorney* and *Assistant State's Attorney,* respectively, for Baltimore City, on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

Appellant, Jerome Prescoe, was tried by the Criminal Court of Baltimore, sitting without a jury, under a six count indictment charging, *inter alia,* the crime of statutory burglary (a misdemeanor) and grand larceny (a felony). A general verdict of guilty was rendered and appellant was sentenced to two years' imprisonment. He appeals from the judgment on the ground that his confession was improperly admitted in evidence.

The record shows that in the early morning hours of February 26, 1962, a store owned by Kramer's West End Corporation in Baltimore, was broken into and 22 men's suits valued at $503.00 and $16.00 in cash were taken from the premises. On June 14, 1962, the police arrested one Lawrence Morgan in connection with the burglary and received information from him that the appellant had participated in it. Morgan also admitted having committed ten other offenses. The officer who investigated the Kramer store burglary testified that at first the police did not believe Morgan's statement implicating the appellant, but after checking for three days became satisfied with the truth thereof. Up to the fourth day the police had only alias names of the appellant, but on that day they received information as to his whereabouts and his correct name. When the investigating officer went off duty that day he left in the station house a report on the case with instructions for an officer to arrest the appellant. At 2:30 a.m. on the fifth day a police officer who had not participated in the investigation arrested the appellant at his home without an arrest or other warrant and took him to the station house. At 8 a.m. on the same day the investigating officer reported for duty and began to question the appellant. A half hour later, six hours after his arrest, appellant gave police a written statement ad-

mitting that he, with two others, had burglarized Kramer's store on February 26, 1962 and taken some suits therefrom which were later divided among them.

The State offered no evidence at the trial of any facts ascertained as the result of Morgan's statement to the police. Asked why a warrant had not been obtained for the arrest of the appellant, the investigating officer testified, "We didn't have grounds enough to obtain a warrant." In his memorandum opinion, referred to hereafter, the trial judge reported that the State had admitted the illegality of the arrest. We were told at oral argument that the assistant state's attorney who had tried the case made such an admission in his closing argument, which does not appear in the transcript. Hence we shall assume, without deciding, that the arrest of the appellant was unlawful because of the absence of either an arrest warrant or probable cause for the police to believe that he had committed a felony.

At the trial appellant's confession was offered in evidence by the State over his counsel's objection that the confession, although conceded to have been freely and voluntarily given, was inadmissible because made by him while under illegal detention. The trial judge reserved his ruling on this objection until the filing of his opinion. In finding the appellant guilty, the trial judge determined that the mere fact that the confession was made subsequent to an illegal arrest would not require its exclusion in a State criminal prosecution if, in fact, it was voluntarily given, as was conceded. This ruling is the basis of the appeal.

The sole and determinative issue in this appeal, as stated by the appellant in his brief, "involves the question of the admissibility of a confession, admitted by the defendant to have been voluntarily given, but made while the defendant was under an arrest, admitted by the State to have been illegal." The State points out, and the appellant concedes, that the Maryland law, as it presently exists, would not require the exclusion of a confession merely because it was made during a period of illegal detention subsequent to an unlawful arrest. See *Payne v. State*, 207 Md. 51, 113 A. 2d 93 (1955) ; *Cox v. State*, 192 Md. 525, 64 A. 2d 732 (1949) ; *Barber v. State*, 191 Md. 555, 62 A. 2d

616 (1948); *Frank v. State,* 189 Md. 591, 56 A. 2d 810 (1948); *Courtney v. State,* 187 Md. 1, 48 A. 2d 430 (1946). See also *Balbo v. The People,* 80 N. Y. 484 (1880); *State v. Raftery,* 158 S. W. 585 (Mo. 1913); *People v. Klyczek,* 138 N. E. 275 (Ill. 1923); 3 *Wigmore, Evidence* (3d ed.), Sec. 823(b); 2 *Wharton's Crim. Evidence* (12th ed.), Sec. 366. As we stated in *Driver v. State,* 201 Md. 25, 30, 92 A. 2d 570 (1952): "The law is clear that, unless the facts show that an unlawful arrest in itself constitutes such duress as to make a confession signed by the defendant while under arrest involuntary, the same rule as to admissibility of the confession is applicable as where the arrest is lawful. * * *."

In Maryland the test of whether a confession is admissible is whether or not it is the "voluntary act of the accused". See *Kier v. State,* 213 Md. 556, 132 A. 2d 494 (1957); *Merchant v. State,* 217 Md. 61, 141 A. 2d 487 (1958). This test has been recognized by the Supreme Court of the United States as the proper one as to the admissibility of confessions in state criminal prosecutions. See, *e.g., Rogers v. Richmond,* 365 U. S. 534 (1961).

It is appellant's position, however, that the decisions of the Supreme Court in *Mapp v. Ohio,* 367 U. S. 643 (1961), and *Wong Sun v. United States,* 371 U. S. 471 (1963), require a re-examination of the "voluntariness test" as heretofore applied in state criminal prosecutions to the admissibility of confessions obtained after an illegal arrest. He argues that a rule similar to the so-called *"McNabb-Upshaw-Mallory"* [1] rule, excluding confessions in federal prosecutions which are obtained during a period of illegal detention in violation of Rule 5(a) [2] of the Federal Rules of Criminal Procedure, must now be applied by the States. This conclusion can be inferred, he maintains, from the Supreme Court's decision in *Mapp v. Ohio, supra.* He also contends that, regardless of this Court's decision as to the applicability of the *McNabb* rule, the recent case

---

1. McNabb v. United States, 318 U. S. 332 (1943); Upshaw v. United States, 335 U. S. 410 (1948); Mallory v. United States, 354 U. S. 449 (1957).

2. Rule 5(a) requires that an accused be brought before a committing magistrate "without unnecessary delay".

of *Wong Sun v. United States, supra,* controls the instant situation and requires the exclusion of his confession. Contrariwise, the State contends that the decision in *Mapp* relates only to the admissibility of evidence obtained through an illegal search and seizure, and that the rule as to the admissibility of confessions in state criminal prosecutions is unchanged thereby—the *McNabb* rule being restricted to federal prosecutions and never having been applied by Maryland. *Cox v. State, supra.* As to *Wong Sun,* it is the State's position that this case does not represent a departure from the "voluntariness test" heretofore recognized by both the Supreme Court and this Court; and that, in any event, the fact that the appellant concedes the voluntariness of his confession is sufficient to require an affirmance of the decision below.

In *Mapp v. Ohio, supra,* the Supreme Court held that the prohibitions of the Fourth Amendment requiring the exclusion of evidence illegally seized was applicable to the States (whether the evidence was seized by State or federal officers) through the Due Process Clause of the Fourteenth Amendment. By so holding, the Supreme Court extended to the States the rule excluding illegally seized evidence which it had first recognized in *Weeks v. United States,* 232 U. S. 383 (1914), as applying only to federal prosecutions. Cf. *Wolf v. Colorado,* 338 U. S. 25 (1949) (where the Supreme Court, while recognizing that the Fourteenth Amendment prohibits unreasonable searches and seizures on the part of the States, declined to require the exclusion of evidence obtained thereby in state criminal prosecutions; this case was overruled by the decision in *Mapp v. Ohio*) ; and cf. *Elkins v. United States,* 364 U. S. 206 (1960). See also Michener, *Unreasonable Searches and Seizures and the Admissibility of Evidence in Maryland,* 21 Md. L. Rev. 321 (1961) for a thorough exposition of the cases preceding *Mapp.* Both the language of *Mapp* and the development of the doctrines therein expounded leave no question but that the rule excluding evidence obtained as the result of an illegal search and seizure is now held to have a constitutional, rather than a merely evidentiary, foundation.

Simultaneously with its concern with the question of excluding evidence obtained as a result of illegal searches and sei-

zures, the Supreme Court has also dealt with the problem of the admissibility of confessions, giving each separate treatment. In the case of *NcNabb v. United States,* 318 U. S. 332 (1943), relied on by the appellant, the Supreme Court held that confessions obtained during the course of an illegal detention resulting from the failure of the arresting officers to comply with federal statutes then in effect requiring prompt production of persons arrested before a judicial officer for preliminary examination, were not admissible in federal prosecutions. *Upshaw v. United States,* 335 U. S. 410 (1948), and *Mallory v. United States,* 354 U. S. 449 (1957), applied the same exclusionary rule in implementation of Rule 5 (a), *supra.* Although the *McNabb* case was presented to the Court in the context of a constitutional problem the Court indicated in denying the admissibility of evidence acquired in derogation of the statutory equivalent of Rule 5 (a) that it was concerned with formulating a rule of evidence to enforce the statutes and that it was not placing its holding on constitutional grounds. (See pp. 340-341 of 318 U. S.) Subsequent Supreme Court cases dealing with Rule 5 (a) have concerned themselves with defining what is regarded as an "illegal detention" and ascertaining the meaning of "without unnecessary delay". See *United States v. Mitchell,* 322 U. S. 65 (1944); *Upshaw v. United States, supra; Mallory v. United States, supra.* See also Hogan & Snee, *The McNabb-Mallory Rule: Its Rise, Rationale, and Rescue,* 47 Geo. L. J. 1 (1958).

Although the Supreme Court has, on a number of occasions, been called upon to apply the *McNabb* exclusionary rule to confessions admitted in state criminal proceedings, the fact that a confession is procured while the accused is illegally held in custody, because of failure to produce him before a magistrate or a judge for a preliminary hearing, has not been held sufficient in and of itself to render the confession involuntary and thus inadmissible, although this fact may be one of the circumstances considered when determining voluntariness. See *Fikes v. Alabama,* 352 U. S. 191 (1957); *Stein v. New York,* 346 U. S. 156 (1953); *Gallegos v. Nebraska,* 342 U. S. 55 (1951); *Watts v. Indiana,* 338 U. S. 49 (1949). In all of the cases in which the Supreme Court has been called on to determine

492

whether or not a confession is admissible in a state criminal proceeding, the "voluntariness test" has been applied. See, *e.g.,* *Gallegos v. Colorado,* 370 U. S. 49 (1962); *Cicenia v. LaGay,* 357 U. S. 504 (1958); *Crooker v. California,* 357 U. S. 433 (1958); *Brown v. Allen,* 344 U. S. 443 (1953); *Gallegos v. Nebraska, supra; Lyons v. Oklahoma,* 322 U. S. 596 (1944).

From the authorities cited it is manifest that the Supreme Court did not intend that *Mapp v. Ohio* was to be read as requiring the *McNabb* rule to be applied to confessions sought to be admitted in state criminal prosecutions. That this conclusion is unassailable seems apparent from the fact that on the very same day the Court decided *Mapp,* it also decided the case of *Culombe v. Connecticut,* 367 U. S. 568 (1961), in which the Court applied the "voluntariness test" to a confession obtained during an illegal detention and admitted in a state criminal proceeding. We think it a reasonable assumption that if the Court felt that its decision in *Mapp* required the application of the *McNabb* rule, it would certainly have done so in this case. On the contrary, Mr. Justice Frankfurter, in his majority opinion in *Culombe,* specifically stated:

> "The *McNabb* case was an innovation which derived from our concern in responsibility for fair modes of criminal proceeding in the federal courts. The States, in the large, have not adopted a similar exclusionary principle. And although we adhere unreservedly to *McNabb* for federal criminal cases, we have not extended its rule to state prosecutions as a requirement of the Fourteenth Amendment." (p. 600 of 367 U. S.)

In discussing the elements to be considered in determining whether a confession was voluntary, Mr. Justice Frankfurter said:

> "* * * No single litmus-paper test for constitutionally impermissible interrogation has been evolved * * *. The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the

confession the product of an essentially free and un-constrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process."

We note that the Supreme Court of Washington, in a decision handed down subsequent to *Wong Sun,* refused to apply the *McNabb* rule in the case of a voluntary confession obtained after an unlawful arrest. *State v. Keating,* 378 P. 2d 703 (Wash. 1963).

It remains only for us to consider what effect, if any, the *Wong Sun* decision may have on the Supreme Court's *application* of its time-honored test of voluntariness for the admissibility of confessions in a case where the confession follows an illegal arrest. In that case petitions for *certiorari* were filed in the Supreme Court by Wong Sun and James Wah Toy after their conviction of narcotics violations in a Federal District Court in California, affirmed by the Court of Appeals for the Ninth Circuit. The Supreme Court ruled that the arrests of both men were unlawful, and held inadmissible incriminating statements made by Toy immediately after his arrest as being tainted by the unlawful invasion of Toy's rights. On the other hand, incriminating statements made by Wong Sun several days after the arrest, when he voluntarily returned to the office of the Narcotics Bureau after having been free on his own recognizance during the intervening period, were held to be a sufficient act of free will so that they were purged of the primary taint of the illegal arrest.

In the case before us, the appellant, attempting to analogize his situation with that of James Wah Toy in *Wong Sun,* invites our attention to the following passage in the opinion in that case (at p. 485 of 371 U. S.) :

"The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of, an unlawful invasion. It follows from our holding in *Silverman v. United States,* 365 U. S. 505, that the Fourth Amendment

494

may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects.' Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies. *McGinnis v. United States*, 227 F. 2d 598. Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion. See *Nueslein v. District of Columbia*, 115 F. 2d 690. Nor do the policies underlying the exclusionary rule invite any logical distinction between physical and verbal evidence. Either in terms of deterring lawless conduct by federal officers, *Rea v. United States*, 350 U. S. 214; or of closing the doors of the federal courts to any use of evidence unconstitutionally obtained, *Elkins v. United States*, 364 U. S. 206, the danger in relaxing the exclusionary rules in the case of verbal evidence would seem too great to warrant introducing such a distinction."

We find nothing in *Wong Sun* to require a holding that the confession herein was improperly admitted. That case involved a federal prosecution, not a State one. But there is no indication therein, or in subsequent cases, that there cannot be a voluntary confession after an illegal arrest, even in federal prosecutions. We think that the answer to the problem before us is to be found in the concession by the appellant, through his attorney, that his confession was freely and voluntarily given. We feel that that concession amounts to a judicial admission by which the appellant is bound.

"It is settled law that when an accused is present in court and represented by competent counsel, he is bound by the actions and concessions of counsel, and that even constitutional rights may be waived in the course of a trial." *Martelly v. State,* 230 Md. 341, 348, 187 A. 2d 105 (1963) ; *Canter v. State,* 220 Md. 615, 155 A. 2d 498 (1959). See also *Wanzer v. State,*

202 Md. 601, 97 A. 2d 914 (1953) ; *Henze v. State,* 154 Md. 332, 140 Atl. 218 (1928) ; *National Ass'n for Advance. of Colored People v. Pye,* 101 S. E. 2d 609 (Ga. 1957) ; *People v. Hammond,* 78 P. 2d 1172 (Cal. 1938) ; *State v. Grier,* 183 S. E. 272 (N.C. 1936) ; *Jones v. United States,* 72 F. 2d 873 (7 Cir. 1934) ; 9 *Wigmore on Evidence* (3rd ed.), Secs. 2588-2592, especially Sec. 2592; 2 *Jones on Evidence* (5th ed.), Sec. 358 (as to judicial admissions in criminal cases) ; cf. *Hutcheson v. United States,* 369 U. S. 599, (1962). "Declarations or admissions by counsel for accused are presumed to be true and to have been made with the consent of accused." 22A C.J.S., *Criminal Law,* Sec. 739 b, p. 1098.

In the case at hand, appellant made no objection whatsoever to his counsel's statements at the trial concerning the voluntariness of his confession. Since no case either in the Supreme Court (involving a State prosecution) or in this Court has been called to our attention, or discovered by us, which would compel the exclusion of a confession that the confessor himself (or through his attorney) admits was voluntarily given, it is our conclusion that the confession in this case was properly admitted into evidence.

*Judgment affirmed.*

BRUNE, C. J., filed the following dissenting opinion.

The question which this case poses is whether or not a confession concededly voluntary under usual and long established tests of voluntariness, is to be excluded from evidence if made by the defendant while under unlawful arrest. Defense counsel has candidly and, I think, correctly submitted the case on this basis. He has made no concession or admission which would put his client in a worse position than he would have been in without this explicit recognition of the problem, for there appears to be no dispute at all with regard to the facts concerning the circumstances under which the confession was made.

The rules developed by the Supreme Court of the United States relating to the exclusion of confessions seem to me to be fourfold. I shall attempt to state them briefly. First, there

is the general rule barring involuntary confessions exemplified, among recent cases, by such cases as *Culombe v. Connecticut,* 367 U. S. 568, and *Rogers v. Richmond,* 365 U. S. 534 (the latter rejecting the trustworthiness test as opposed to the voluntariness test). (This rule is firmly established in Maryland.)

Second, there is the so-called *McNabb-Mallory* rule, based upon *McNabb v. United States,* 318 U. S. 332, and *Mallory v. United States,* 354 U. S. 449, barring the use of confessions obtained during a period of unlawful detention. This rule has been applied to federal prosecutions. In its original formulation, the Supreme Court found it unnecessary to decide any constitutional issue, and the doctrine was laid down as one of federal procedure and federal rules of evidence, and as an exercise of the supervisory powers of the Supreme Court over the administration of justice in the federal courts. (Considering it only as such, this Court has held it not applicable to prosecutions in Maryland state courts, and this Court has rejected a comparable doctrine as a matter of state law. The majority opinion adheres to prior decisions of this Court so holding. Contrast the view of Judge Fuld in his concurring opinion in *People v. Lane,* 10 N. Y. 2d 347, 179 N. E. 2d 339).

Third, there is a rule based upon the denial of the right to counsel which excludes evidence of an admission of guilt made without the benefit of the advice of counsel in the course of a preliminary hearing prior to trial, at least in a capital case. *White v. Maryland,* 371 U. S. 909, 83 S. Ct. 1050, reversing the judgment of this Court in *White v. State,* 227 Md. 615, 177 A. 2d 877. Whether the rule of the *White* case and of *Hamilton v. Alabama,* 368 U. S. 52 (lack of counsel at arraignment) applies beyond capital cases is, perhaps, not yet clear; but if *Gideon v. Wainwright,* 372 U. S. 335, overruling *Betts v. Brady,* 316 U. S. 455, may be considered a guidepost on this question (as I think it should be) this rule, I should also think, would not be limited to capital cases. See also the case entitled *Patterson v. Warden,* 372 U. S. 776, 83 S. Ct. 1103, vacating, per curiam, the judgment of this Court in *Patterson v. State,* 227 Md. 194, 175 A. 2d 746, and remanding the case for further consideration in the light of *Gideon.* In a

collision with such a rule as that of *Hamilton* and *White*, prejudice or the absence thereof is of no importance. (Cf. present Maryland Rule 719 b and its predecessor, Maryland Rule 723 b, relating to arraignment and the right to counsel in serious cases and *Hill v. State*, 218 Md. 120, 145 A. 2d 445. Both the past and present forms of Rule 719 b were adopted after *Betts v. Brady* and before *Gideon v. Wainwright*.)

Fourth, there is the rule long established in the federal courts which excludes evidence which is the product of an unlawful search or seizure. This rule was not generally followed in the state courts, though it gained adherents over the years. Maryland adhered to the rule admitting evidence, if relevant, regardless of the legality or illegality of the means by which it was procured. See *Lawrence v. State*, 103 Md. 17, 63 A. 96, *Meisinger v. State*, 155 Md. 195, 141 A. 536, and many later decisions in cases involving felonies or otherwise excepted from the operation of the Bouse Act referred to below. The rule was adhered to in *Meisinger* by a closely divided court (4-3), over the vigorous and able dissent of Judge Parke, in which he was joined by Chief Judge Bond and Judge Digges. It was modified by a statute commonly known as the Bouse Act, originally enacted as Ch. 194 of the Acts of 1929, since amended on a number of occasions. See Code (1957), Art. 35, §§ 5 and 6 (the latter having been added by Ch. 59 of the Acts of 1952 and amended by Ch. 53 of the Acts of 1959), and Code (1957), Art. 27, § 299, exempting prosecutions under the narcotics laws from its operation. In general, the Bouse Act and its successors prohibit the use of evidence illegally obtained in prosecutions for misdemeanors, but did not apply to prosecutions for felonies.

Since the decision of the Supreme Court in *Mapp v. Ohio*, 367 U. S. 643, the exclusionary rule prevailing in the federal courts extends to prosecutions in the state courts, and the distinctions between felonies and misdemeanors, or between misdemeanors generally and certain kinds of misdemeanors or certain kinds of misdemeanors committed in certain parts of the State, are no longer significant. The exclusionary rule of *Mapp v. Ohio* applies to evidence in all kinds of criminal cases. *Belton v. State*, 228 Md. 17, 178 A. 2d 409.

In *Belton* this Court clearly recognized (228 Md. at 20) that in the *Mapp* case the Supreme Court had held the exclusionary rule to be of constitutional origin. *Mapp*, it will be recalled, overruled *Wolf v. Colorado,* 338 U. S. 25, which had held the prohibitions against unreasonable searches and seizures of the Fourth Amendment to the Constitution of the United States to be applicable to the states through the Fourteenth Amendment, but had refused to apply the federal exclusionary rule to a state prosecution.

In *Henry v. United States,* 361 U. S. 98, the Supreme Court pointed out that an illegal arrest falls within the scope of the Fourth Amendment, just as does an illegal search or seizure. The majority opinion, written by Mr. Justice Douglas, noted that the statutory authority of FBI officers and agents to make felony arrests without a warrant was restricted to offenses committed "in their presence" or where they have "reasonable grounds to believe that the person to be arrested has committed or is committing" a felony, and then said: "The statute states the constitutional standard, for it is the command of the Fourth Amendment that no warrants for either searches or arrests shall issue except 'upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' " [1] (361 U. S. 100.)

In *Silverman v. United States,* 365 U. S. 505, evidence of conversations obtained by the use of a listening device operating through a spike driven into a wall so as to make contact with the duct system of the building occupied by the defendants, was held inadmissible.

The most recent decision of the Supreme Court relevant to this case of which I am informed is *Wong Sun v. United States,*

---

1. Mr. Justice Black concurred in the result. Mr. Justice Clark with whom the Chief Justice joined, dissented on the ground that at the time when they deemed the arrest to have been made, the agents had reasonable grounds to believe that the person arrested was committing a felony in their presence, and hence that the arrest of the defendant and the search of the automobile he was using and the seizure of goods stolen from interstate shipment found in the car were entirely proper. The dissent manifests no disagreement with the statement quoted from the majority opinion.

371 U. S. 471, decided in January, 1963. That is a federal narcotics case in which two defendants were convicted of fraudulent and knowing transportation of illegally imported heroin. One of them, James Wah Toy, was arrested in his home without a warrant or a search warrant or probable cause. The entry of the officers and Toy's arrest were held unlawful, and a statement which he made at the time thereof was held inadmissible. So were narcotic drugs found in the possession of another as a result of information contained in Toy's statement then made. Some days later, after Toy had been arraigned and released on his own recognizance, he returned to the office of the narcotics agents and made a confession. Without passing on its admissibility, the Supreme Court held that it was insufficient to support this defendant's conviction because it was uncorroborated, his statement at the time of his arrest and the evidence obtained as a result thereof having been excluded, and a statement by his co-defendant made after arrest having also been held inadmissible against Toy. The other, Wong Sun, was also held to have been illegally arrested. The agents had no warrant for his arrest and were held not to have had probable cause upon which to arrest him without a warrant. Wong Sun, too, was released after arraignment on his own recognizance and he also returned to the narcotics agents several days later and gave them an oral confession. There was no challenge to its voluntary character. It was held admissible because the lapse of time between the arrest and the unlawful confession had rendered the connection between the unlawful arrest and the confession so attenuated as to remove the "taint." (The case against Wong Sun was remanded for a new trial on a ground not here relevant—the possible effect of the consideration as against him of the confession of a co-defendant which was not admissible against him).

*Wong Sun* is not a typical *McNabb-Mallory* rule case since the confessions were not obtained during or as a result of undue prolongation of a detention which was originally lawful; nor does the case, as I understand it, purport to rest on the *McNabb-Mallory* rule. In *Henry v. United States, supra,* that rule was not involved, but this passage from an article on it by Hogan and Snee, entitled *The McNabb-Mallory Rule:*

*Its Rise, Rationale and Rescue,* 47 Georgetown L. J. 1, 22, was quoted with approval (361 U. S. at 101) : "Arrest on mere suspicion collides violently with the basic human right of liberty." The same article is also referred to in a footnote to *Wong Sun.*

In the majority opinion in *Wong Sun* Mr. Justice Brennan, after pointing out that the "exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion," went on to say that "[i]t follows from our holding in *Silverman v. United States,* [*supra*] * * * that the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects.' Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies. * * * Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion. See *Nueslein v. District of Columbia,* [73 App. D. C. 85], 115 F. 2d 690. Nor do the policies underlying the exclusionary rule invite any logical distinction between physical and verbal evidence." (371 U. S. 485-86.)

If the discussion of this matter had ended at that point, the applicability of *Wong Sun* to the instant case would be clearer to me than it is. The opinion then went on to refer to the policy considerations of deterring lawless conduct by *federal* officers and of closing the doors of *federal* courts to any use of evidence unconstitutionally obtained. (Italics mine.) Since *Wong Sun* was a federal prosecution, these considerations were clearly and directly relevant. There may, however, be some inference that these comments indicate that *Wong Sun* is limited in application to federal prosecutions. I cannot read its significance as being so limited when it is considered in conjunction with *Mapp.* The *Mapp* case, as I have already noted, ascribes a constitutional foundation to the exclusionary rule. It also makes it clear that the Supreme Court was closing the door upon different rules for the admissibility of evi-

dence obtained by an unlawful search or seizure depending upon whether a prosecution was in a federal or a state court.

It is, of course, true that *Culombe v. Connecticut, supra,* and *Mapp v. Ohio, supra,* were decided by the Supreme Court on the same day, and that the test of admissibility of a confession was held in *Culombe* to be voluntariness. The issue of an illegal arrest as the effective cause of a confession does not appear to have been directly passed upon in *Culombe;* nor do I read *Culombe* as actually holding that the arrest and dentention of the defendant was unlawful, though there was an extensive discussion of arrest or detention for investigation.

*Wong Sun* does, as I understand it, both as to the statements of Toy made immediately after his arrest and as to the confession of Wong Sun, adopt the view that an admission or confession which is the direct result of an unlawful arrest is to be excluded from evidence just as much, and for the same reasons, as tangible fruits of an unlawful search and seizure are to be excluded. Those reasons, as I understand *Mapp,* have their foundation in constitutional provisions. Wong Sun's confession was held admissible because its "taint" arising from his unlawful arrest had become too attenuated to bar its use. The clear implication is that, but for such attenuation, it would have been barred.

The interpretation of *Wong Sun* which I have endeavored to set forth appears to be supported by a comment by Professor Kamisar in his book review of the *Report and Recommendations of the Commissioners' Committee on Police Arrests for Investigation* and of a *Memorandum* thereon by the Chief of Police of the District of Columbia in 76 Harv. L. Rev. 1502, at page 1509. Professor Kamisar there states that "since the decision in *Wong Sun v. United States,* handed down some five months after the completion of the *Report,* the admissibility of any verbal evidence elicited from an illegally arrested person is jeopardized—especially verbal evidence obtained immediately after the unauthorized arrest." In an interesting footnote to this passage, he discusses *Wong Sun* and cites it in support of the statement that "[a]lthough the great weight of authority, both state and federal, had been to the contrary [referring to another note and an article by Professor Kamisar therein

cited published in 1961 U. Ill. L. R. 78, especially cases collected at p. 81, n. 16] it is now fairly clear that verbal evidence which derives 'immediately' from a unlawful arrest will be thrown out as the 'fruit' of police illegality." He also refers to the dissipation of the taint by release between arrest and confession and to an unclear situation intermediate between the two stated, and the possible interplay between *Wong Sun* and the *McNabb-Mallory* rule where applicable.

A similar result to that in *Wong Sun* was reached by the New York Court of Appeals in *People v. Rodriguez,* 11 N. Y. 2d 279, 183 N. E. 2d 651 (1962), decided some months before *Wong Sun* on the authority of *Mapp.* The defendant contended that certain statements of his were improperly received in evidence and that "he had been induced to confess to the killings after being confronted with a gun and other articles illegally obtained from his room." The case was remanded for a new trial. Judge Fuld, with whom all but one of his colleagues appear to have concurred on this matter, said with regard to this phase of the case: "If, as he asserts, any of his statements were the product or fruit of an illegal search and seizure, they should have been excluded; the rule announced in *Mapp v. Ohio* (367 U. S. 643 * * *), renders inadmissible not only the items obtained, but any evidence which stems from their use. * * * And, obviously, it matters not that these 'fruits' happen to be confessions rather than some other type of evidence." (183 N. E. 2d 653-654.) See also the comment of Mr. Justice Goldberg on the *Rodriguez* case in his concurring opinion in *Cleary v. Bolger,* 371 U. S. 392, at 402-03.

There is another passage in *Wong Sun* which raises what is to me the most serious question as to the applicability of its general doctrine to this case. This is the inference which I draw from the statement made by the Court in answer to a contention advanced by the Government. This contention was to the effect that Toy's statements made immediately after his arrest were admissible as having been made as an independent act of free will. In rejecting this contention the Supreme Court held that on the facts relating to his arrest it would be "unreasonable to infer that [his] response was sufficiently an act of free will to purge the primary taint of the

unlawful invasion." (371 U. S. 486.) This passage indicates to me that there is some area of uncertainty, as suggested by Professor Kamisar, in the interval between an illegal arrest and a confession voluntarily made after release from custody as to the precise point at which the taint of the illegal arrest becomes so attenuated as to be without significance. This point, which I admit is not easily determinable and which, I suggest, cannot be fixed as a simple matter of so many hours or minutes, but only by a consideration of all relevant facts, seems to me to be the point at which the unlawful arrest ceases to be an effective cause of the confession (or admission). Such a problem is present here, but in my estimation the answer should be the same as with regard to Toy's statement upon arrest in *Wong Sun*. Here the appellant was arrested at 2:30 A.M. and was held in custody for nearly six hours to await the arrival of an officer who had investigated the crime and who was to interrogate the appellant about it. That officer came on duty at 8 A.M. The appellant's confession was given at 8:30 A.M. In these circumstances, the appellant meanwhile being held in custody without any outside contact, it seems to me that the unlawful arrest continued to be an operative and effective cause of the confession, and hence that the confession was the product of the arrest. At the trial the State admitted the arrest to have been unlawful. The majority opinion accepts this admission as binding, and I do also, though I have some doubt that the admission was providently made.

I would reverse the judgment and remand the case for a new trial under a rule excluding a confession made as a result of an unlawful arrest.